[No. F059302. Fifth Dist. Mar. 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL VINSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and parts I., III., and IV. of the Discussion.

**COUNSEL**

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Jamie A. Scheidegger and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRANSON, J.**—David Michael Vinson stands convicted, following a jury trial, of committing petty theft after having previously been convicted of a theft offense. (Pen. Code,[1] § 666.) Following a bifurcated court trial, he was found to have served two prior prison terms. (§ 667.5, subd. (b).) Sentenced to a total of five years in prison and ordered to pay various fees and fines, he now appeals. For the reasons that follow, we affirm. In the published portion of this opinion, we conclude the amendment to section 666 that became effective on September 9, 2010, applies retroactively. In the unpublished portion, we reject Vinson's claims of insufficient evidence, and trial and sentencing error.

## FACTS[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

### I.

### EVIDENTIARY RULINGS[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

### SECTION 666 AMENDMENT

At the time Vinson committed the present offense, former section 666 provided: "Every person who, having been convicted of petty theft, grand

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[*] See footnote, *ante*, page 1190.

theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison."

Effective September 9, 2010, Assembly Bill No. 1844 (2009–2010 Reg. Sess.), the Chelsea King Child Predator Prevention Act of 2010 (hereafter Assembly Bill 1844 or the act), amended section 666 to provide, in pertinent part: "(a) Notwithstanding Section 490 [(specifying the punishment for petty theft)], every person who, having been convicted *three or more times* of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison." (Italics added.)

■ Clearly, new subdivision (a) of section 666 requires proof of at least three prior convictions, not just one, for individuals who, like Vinson, have not suffered prior serious or violent felony convictions and who are not required to register as sex offenders.[6]

## A. *Retroactivity.*

The parties agree that Vinson's conviction in the present case was not yet final when the amendment went into effect. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [25 Cal.Rptr.3d 337, 106 P.3d 990] [for determining retroactive application of amendment to criminal statute, judgment is not final until time for petitioning U.S. Supreme Court for writ of certiorari has passed].) Accordingly, if the amendment to section 666 applies retroactively, Vinson is entitled to its benefits.

The Attorney General originally argued that the amendment did not apply retroactively. At oral argument, however, she withdrew that claim and conceded the point. We believe the concession is well founded, as we explain.

---

[6] New subdivision (b) of section 666 provides for imprisonment in the county jail or state prison upon conviction of petty theft with one prior theft-related conviction and period of incarceration for persons who are required to register as sex offenders or who have suffered a prior violent or serious felony conviction under the three strikes law.

█ Section 3 provides: "No part of [the Penal Code] is retroactive, unless expressly so declared." The statute " 'reflects the common understanding that legislative provisions are presumed to operate prospectively, and that they should be so interpreted "unless express language or clear and unavoidable implication negatives the presumption." [Citation.]' [Citation.] '[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citation.]" (*In re E.J.* (2010) 47 Cal.4th 1258, 1272 [104 Cal.Rptr.3d 165, 223 P.3d 31]; accord, *People v. Alford* (2007) 42 Cal.4th 749, 753 [68 Cal.Rptr.3d 310, 171 P.3d 32]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208, 1209 [246 Cal.Rptr. 629, 753 P.2d 585].)

However, section 3 "is not intended to be a 'straitjacket.' " (*People v. Alford, supra*, 42 Cal.4th at p. 753.) "Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*).)[7] "Even without an express declaration, a statute may apply retroactively if there is ' "a clear and compelling implication" ' that the Legislature intended such a result. [Citation.]" (*People v. Alford, supra*, at p. 754.)

█ In *Estrada*, the California Supreme Court confronted the question, "A criminal statute is amended after the prohibited act is committed, but before final judgment, by mitigating the punishment. What statute prevails as to the punishment—the one in effect when the act was committed or the amendatory act?" (*Estrada, supra*, 63 Cal.2d at p. 742.) The high court observed that the problem was one of trying to ascertain the legislative intent: "Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional." (*Id.* at p. 744.) The Legislature not having done so, it fell to the court to attempt to determine the

---

[7] The same is true with respect to the saving clause contained in Government Code section 9608. (*Estrada, supra*, 63 Cal.2d at p. 746; see also *People v. Rossi* (1976) 18 Cal.3d 295, 299–300 [134 Cal.Rptr. 64, 555 P.2d 1313].) That statute provides: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law." (Gov. Code, § 9608.)

legislative intent from other factors. The court concluded: "There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at pp. 744–745.)

In amending section 666, the Legislature included no express statement concerning which statute should apply. (Cf. *People v. Floyd* (2003) 31 Cal.4th 179, 182, 183–185 [1 Cal.Rptr.3d 885, 72 P.3d 820] [although Prop. 36 ameliorated punishment, it did not apply to defendant sentenced before its effective date but whose judgment was not yet final as of that date, because Legislature expressly stated that act's provisions were to be applied prospectively].) Accordingly, we must ascertain the legislative intent from other factors such as the history of the statute, committee reports, and staff bill reports. (*Evangelatos v. Superior Court, supra,* 44 Cal.3d at p. 1210; *In re Chavez* (2004) 114 Cal.App.4th 989, 994 [8 Cal.Rptr.3d 395].)

It is readily apparent that the overall intent of Assembly Bill 1844 was to significantly increase punishment for various sex offenses against minors. (See, e.g., Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Apr. 28, 2010, p. 1.) This does not mean, however, that the Legislature did not concomitantly intend the amendment to section 666 to reduce punishment to the class of criminals covered by that particular statute. (See *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 297, 300–301 [279 Cal.Rptr. 592, 807 P.2d 434] [treating different provisions within single initiative measure differently for purpose of retroactive application].)

As originally conceived, the act made no change to section 666. (Assem. Amend. to Assem. Bill No. 1844 (2009–2010 Reg. Sess.) Apr. 13, 2010.)[8] The Legislative Analyst's Office conservatively estimated, however, that Assembly Bill 1844 would create annual general fund costs in the tens of millions of dollars within the decade, and hundreds of millions of dollars in the longer term. (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Apr. 28, 2010, pp. 1–2.) Concerns were also raised about the effect of the act on California's severe prison overcrowding problem. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended June 2, 2010, pp. Y–Z.)

In an apparent effort to alleviate these concerns, Assembly Bill 1844 was amended to include changes to section 666. (Sen. Amend. to Assem. Bill No. 1844 (2009–2010 Reg. Sess.) Jul. 15, 2010.) These changes, which became, in pertinent part, current section 666, subdivision (a), were intended to allow California's Department of Corrections and Rehabilitation to offset the new costs created by Assembly Bill 1844 by avoiding the costs of imprisonment associated with a particular class of offenders—those with fewer than three prior convictions for qualifying offenses. (Sen. Appropriations Com., Fiscal Summary, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Aug. 2, 2010, p. 6.)

It is true that the punishment for violating the statute is the same under subdivision (a) of current section 666 as it was under former section 666, i.e., imprisonment in the county jail not exceeding one year or in state prison. In other words, both versions of the statute describe a "wobbler"—an offense that is punishable either as a misdemeanor or as a felony. To be eligible for felony sentencing under section 666 as amended, however, it is no longer enough that the defendant previously have been convicted of a single specified theft-related conviction. Instead, three or more such qualifying convictions are now required. This change to section 666's sentencing factor (see *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076]) is akin to adding an element to a crime or an enhancement, and benefits a defendant by making it less likely that he or she will qualify for felony-level punishment. Accordingly, *Estrada*'s reasoning applies. (See *People v. Flores* (1995) 37 Cal.App.4th 1566, 1571 [44 Cal.Rptr.2d 585].)

---

[8] As introduced, Assembly Bill 1844 had to do with inmate labor and the maintenance of prison grounds. (Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as introduced Feb. 12, 2010.)

*People v. Nasalga* (1996) 12 Cal.4th 784 [50 Cal.Rptr.2d 88, 910 P.2d 1380] (*Nasalga*), which dealt with retroactive application of a changed threshold for imposition of a sentence enhancement, is instructive. As described in *Nasalga*, effective June 30, 1992, the Legislature amended section 12022.6, subdivisions (a) and (b), to increase the property loss required for a one-year enhancement from $25,000 to $50,000, and to increase the loss required for a two-year enhancement from $100,000 to $150,000. The defendant in that case stole $124,000 before the amendment of section 12022.6, but her conviction was not final when the amendment became operative. The question before the court was whether the defendant was entitled to the benefit of the 1992 amendment, making her eligible only for the one-year enhancement. Relying on *Estrada* and a case decided the same day, *In re Kirk* (1965) 63 Cal.2d 761 [48 Cal.Rptr. 186, 408 P.2d 962], the California Supreme Court answered the question in the affirmative. (*Nasalga, supra,* at p. 787.)

The court noted that the rule stated in *Estrada* has been applied to statutes governing penalty enhancements as well as statutes governing substantive offenses. (*Nasalga, supra,* 12 Cal.4th at p. 792.) "Of particular relevance," the court observed, "courts have held that amendments, such as the one at issue here, that mitigate punishment by increasing the dollar amount for certain crimes or enhancements, should be applied retroactively, in the absence of a saving clause or other indicia of a contrary legislative intent. [Citations.]" (*Id.* at p. 793.) As section 12022.6 contained no express saving clause, the court turned to the legislative history in an effort to ascertain the Legislature's intent, and determined that the increase in the threshold loss requirements was intended to account for the effects of inflation. (*Nasalga, supra,* at p. 794.) The court rejected the Attorney General's argument that this meant the Legislature intended to make the new tiers prospective only, and instead found nothing in the legislative history that demonstrated an intent to punish persons whose theft occurred before the amendments more harshly than others whose thefts of the same amounts occurred after the amendments. (*Id.* at p. 795.)

The court also rejected the Attorney General's further argument that, because the Legislature added subdivisions to punish more harshly certain white-collar criminals at the same time it reduced punishment for persons such as the defendant, this contradicted the presumption of retroactive application of the ameliorative provisions of the statute. (*Nasalga, supra,* 12 Cal.4th at p. 796.) The high court stated: "Different amendments to the same

statute may reduce penalties for one class of defendants while simultaneously increasing penalties for another class. Such differences in treatment, in the absence of discernible legislative intent to the contrary, do not alter the principle of *Estrada*. Thus, provisions of a statute that have an ameliorative effect must be given retroactive effect, even where other provisions of the same statute clearly do not have such an effect. [Citations.]" (*Nasalga, supra*, at p. 796.) The court concluded by adhering to *Estrada*'s "well-established principle that 'where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' [Citations.]" (*Nasalga, supra*, at pp. 797–798.)

*People v. Figueroa* (1993) 20 Cal.App.4th 65 [24 Cal.Rptr.2d 368] (*Figueroa*) is to the same effect. There, the defendant received a three-year enhancement for selling drugs within 1,000 feet of a school. While his appeal was pending, the enhancement statute was amended to require that school be in session or that minors be using the facility when the offense occurred. The change was made to conform the enhancement statute to existing language in another statute. (*Id.* at p. 69 & fn. 1.) Applying *Estrada* and its progeny, including *Tapia v. Superior Court, supra*, 53 Cal.3d at page 301, the appellate court held that the defendant must be given the benefit of the amended statute, despite the fact the result was a lack of evidence at trial with respect to the new requirements. (*Figueroa, supra*, at pp. 69–71.) In *People v. Todd* (1994) 30 Cal.App.4th 1724, 1728–1729 [36 Cal.Rptr.2d 774], the court followed *Figueroa* despite the fact the amendment to the school-zone enhancement statute expanded the list of offenses subject to enhancement, thereby in part increasing punishment.

█ Assembly Bill 1844's amendment of section 666 had the effect of mitigating punishment by raising the level of recidivism required before a defendant can be sentenced to state prison. The Legislature's clear purpose was to save money and space in order to partially offset the higher costs and inmate population occasioned by increasing sentences for sexual predators. In light of the concerns expressed in the legislative history about prison overcrowding and the costs associated with the act, and the fact the cost avoidance achieved by shifting some nonviolent, non-sex-offender recidivists to the county correctional level will not completely offset the new costs (see Sen. Appropriations Com., Fiscal Summary, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Aug. 2, 2010, p. 6), it would make no sense to conclude the section 666 amendment should apply only concurrently with the remaining provisions of the act, i.e., prospectively. We hold that, under *Estrada* and its progeny, Vinson is entitled to the benefit of the amendment to section 666.

## B. *Number of Qualifying Prior Convictions and Periods of Incarceration*

Not surprisingly, Vinson claims that the elements of a violation of section 666, as amended—specifically, three prior theft-related convictions and three periods of incarceration—were never pled or proven at trial. Hence, he concludes, he is entitled to have his conviction reduced to misdemeanor petty theft.

■ " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citation.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211 [120 Cal.Rptr.2d 783, 47 P.3d 629].)

Section 666, subdivision (a)'s requirement with respect to prior convictions is clear and unambiguous, at least for our purposes: To fall within the statute's purview, a defendant must previously have been convicted at least three times of a specified (qualifying) offense.[9] What is not clear and unambiguous is the number of prior periods of incarceration the defendant must have served. Stripped of everything not essential to this issue, the statute reads: "[E]very person who, having been convicted three or more times . . . and having served a term therefor . . . or having been imprisoned . . . for that offense . . . ." (*Ibid.*) The language can be read to mean a single term of incarceration is sufficient (the People's position) or that a term of incarceration must have been served for each prior conviction (Vinson's position).

■ In light of Vinson's concession that the section 667.5, subdivision (b) enhancements established two prior convictions and periods of incarceration and our conclusion that the attorneys' stipulation at trial established a third prior conviction and period of incarceration (each discussed in the unpublished portion of our opinion, *post*), we need not determine the number of periods of incarceration required under current section 666, subdivision (a). However, the statute is plainly ambiguous in this regard, and there is no mention in the legislative history of the number of periods of incarceration. (See, e.g., Assem. Concurrence in Sen. Amendments, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Aug. 20, 2010,

---

[9] It is conceivable that the statute's requirement of "three or more times" might be considered ambiguous if, for example, a defendant were convicted of more than one qualifying offense on a single occasion. That situation is not presented in this case, and we express no opinion thereon.

p. 2; Sen. Rules Com., Off of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Aug. 20, 2010, p. 6; Sen. Appropriations Com., Fiscal Summary, Analysis of Assem. Bill No. 1844 (2009–2010 Reg. Sess.) as amended Aug. 2, 2010, p. 6.) Accordingly, we urge the Legislature to clarify the statute on this point.

### III.–IV.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Wiseman, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2011, S192737.

---

[*]See footnote, *ante*, page 1190.