Filed 10/16/14  P. v. Hammond CA3
Opinion following rehearing

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C072045 |
| Plaintiff and Respondent, | (Super. Ct. No. 12NCR09173) |
| v. | OPINION AFTER REHEARING |
| SCOTT JAMES HAMMOND, | |
| Defendant and Appellant. | |

Defendant Scott James Hammond appeals from his conviction of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)),[1] transportation of oxycodone (§ 11352, subd. (a)), and possession of drug paraphernalia, a misdemeanor (§ 11364.1). The conviction and grant of probation followed a court trial in which the only evidence presented was a stipulated factual statement. The statement was read into

---

[1] Further undesignated statutory references are to the Health and Safety Code.

1

the record by the prosecutor and, without objection, was augmented by defense counsel before argument by both counsel.

Defendant filed an opening brief asserting the trial court committed reversible error in failing to advise him, and obtain his waiver, of his constitutional rights to confrontation and against self-incrimination, and arguing that evidence of his minimal movement of the drugs from his pocket to the floor of his car was insufficient to prove the element of carrying or conveying the substances required for transportation. Our unpublished opinion filed on December 9, 2013, was written to affirm the judgment, but thereafter, on our own motion, we ordered rehearing and directed the parties to file supplemental briefing on whether "section 11379, as amended by Statutes 2013, chapter 504, effective January 1, 2014, affects the disposition of [defendant's] conviction." The briefing was to address whether the amendment of section 11379 to provide that " ' "transports" means to transport for sale' " requires modification of the judgment and in what respects.

The parties agree that defendant is entitled to the benefit of the amendment of section 11379, which, as amended, requires a finding that the methamphetamine was being transported for sale. The parties also agree the record does not support such a finding so that defendant's conviction for transportation of methamphetamine must be vacated. The parties disagree on the disposition. Defendant asserts that we must simply vacate his conviction. The People argue the case should be remanded for further proceedings. (Cf. *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71 (*Figueroa*).) We conclude that remand for retrial is required not only on defendant's conviction for violating section 11379, but also on defendant's conviction for violating section 11352, which was amended at the same time to include the same definition.

## FACTS AND PROCEDURAL HISTORY

Defendant waived his right to a preliminary hearing. When arraigned on the information, defendant waived advisement of his rights on the information. Defense

2

counsel stated that he had discussed with defendant "waiving his right to a jury trial and doing a court trial on this matter" but that they were "not stipulating" to transportation, arguing that it was "a personal use case." The People also waived trial by jury. The court then engaged in the following colloquy with defendant:

"The Court: And Mr. Hammond, I don't know if you heard what I was mentioning to the last person who was waiving their right to a jury trial to have this issue basically before what we call our appellate courts. We're really looking at a set of circumstances to have an area of law cleared up here. But just what I told him, based upon the current set of the law, unless there's some substantial difference on the facts that you would be presenting me, I probably would find you guilty at a court trial.

"Do you understand that?

"The Defendant: Yes, sir.

"The Court: You still wish to have a court trial?

"The Defendant: Yes, sir.

"The Court: All right. And you know the difference? You had an opportunity to talk to [defense counsel] about the difference between a court trial and a jury trial?

"The Defendant: No, but I heard you talking to the last guy.

"The Court: So you know the difference then?

"The Defendant: Yes, sir.

"The Court: Thank you, Mr. Hammond."

At the court trial, the parties submitted and "agree[d] that the Court may enter its verdict and judgment" on a stipulated factual statement. At the court's request, the prosecutor read the stipulated factual statement into the record:

"On March 25, 2012 Glenn County Sheriff's deputies Jon Owens and Jason Holley were on patrol near the City of Orland. At approximately 9:30 p.m. they observed a car parked in the driveway at 6379 County Road 200. The car had its driving lights on and the location of the vehicle was suspicious because the house in front of which the car

was parked was vacant. Deputy Owens contacted the driver, subsequently identified as Scott Hammond and asked him what he was doing at the residence. Hammond, who appeared to be under the influence of methamphetamine, indicated that he had just driven to a friend's residence behind the 6379 CR 200 address and was planning on heading back to his mother's residence on County Road G. As Owens had approached the vehicle he had observed the driver fumbling around on the front seat. Owens asked Hammond if he was on probation or parole. Hammond replied that he was on probation and that his driver's license was suspended. Hammond was asked if he had anything illegal on his person or in the vehicle. He replied that he had a pipe in his pocket and there was some meth[amphetamine] under the front seat. Hammond was also asked what he had been doing when he saw the deputies pull up. Hammond responded that he had been trying to hide his meth[amphetamine] and a few 'Percocet'. A search of Hammond's person and vehicle was conducted. A meth[amphetamine] pipe was found in his pants pocket, a small baggie of white crystalline substance was found under the driver's seat, and nine 325 mg Percocet tablets were found scattered under the seat on the floor board. Hammond was asked about the white crystalline substance and acknowledged that it was methamphetamine. Hammond stated that he had just purchased the meth[amphetamine] that date and that it was a '20 sack' (street parlance for a twenty dollar bag) and that it contained approximately .2 grams. Hammond stated that he intended to use the meth[amphetamine] himself, but was planning on dropping off the Percocet at a friend's house.

"The suspected methamphetamine and Percocet was sent to the Department of Justice laboratory in Chico. It was determined that the small baggie contained .36 grams of methamphetamine and that the Percocet tablets in fact contained oxycodone (Percocet is a trade name for an acetaminophen/oxycodone combination)."

The court inquired whether defense counsel had any additional stipulations. Defense counsel stated that "the methamphetamine found was of a quantity for personal

4

use and there was no intent to distribute." The court then entertained argument from both parties.

The prosecutor argued that the facts supported transportation even though the officers did not observe the car move, citing the vacant house, the car with its lights turned on, and defendant's statement acknowledging that he had just arrived. The prosecutor argued laboratory testing established the substances found were contraband and the quantity was of a usable amount. Finally, the prosecutor argued that the methamphetamine pipe established the paraphernalia count. The prosecutor stated, "The People have essentially abandoned the [Health and Safety Code section] 11550 and [Vehicle Code section] 14601.2 [violations] that would have been charged in this case."

Defense counsel argued that defendant's "admission" that he had "driven" to the location did not establish "where the drugs came from," noting that the officers did not observe defendant transport the drugs and there was "no evidence that the location was not where he had purchased the drugs or gotten the drugs." Defense counsel also argued that the amounts were for personal use. Upon the court's inquiry about defendant's statement that he planned to transport to furnish to someone else, defense counsel argued defendant's intent to do so did not establish movement. Defense counsel conceded that the officer observed defendant "fumbling his hands in an effort to -- [¶] . . . [¶] . . . conceal it."

In convicting defendant on both transportation counts, the court concluded that the movement required for transportation may be minimal and that the movement from defendant's "pocket to [the] floor" was sufficient. The court also convicted defendant of the paraphernalia count. The court acquitted defendant of counts III and V, "based upon the lack of no [*sic*] presentation of evidence."

5

## DISCUSSION

### I

Defendant contends the trial court prejudicially erred in failing to advise him of his constitutional rights upon submission of his case on a stipulated factual statement. Claiming that his submission was a "slow plea," defendant argues that the stipulated factual statement admitted every evidentiary fact or element of the charged offenses, requiring advisement and waiver of his rights. He claims a review of the entire record reflects that he did not submit with an understanding and waiver of his constitutional rights. The People argue that the circumstances here do not reflect a "slow plea" because defendant's guilt was "fully contested" in that defense counsel argued there was no evidence of transportation and that defendant was guilty of only possession. We conclude this was not a "slow plea" and any error by the trial court in accepting the stipulated facts without advisements was harmless.

### *Boykin-Tahl* advisements and "slow pleas."

Prior to accepting a defendant's guilty or no contest plea, a trial court must inform the defendant of his constitutional rights (jury trial, confrontation, and self-incrimination) and obtain his waiver. (*Boykin v. Alabama* (1969) 395 U.S. 238, 242-244 [23 L.Ed.2d 274, 279-280] (*Boykin*); *People v. Howard* (1992) 1 Cal.4th 1132, 1175, 1176, 1179; *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*).) A defendant's stipulation to all the evidentiary facts or elements of an offense required for conviction also necessitates advisement and waiver of these rights if the stipulation is tantamount to a plea of guilty. (*People v. Adams* (1993) 6 Cal.4th 570, 576-583 (*Adams*); *People v. Little* (2004) 115 Cal.App.4th 766, 772-773, 778 (*Little*).)

A "slow plea" is " 'an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' Perhaps the clearest example of a slow plea is a bargained-for submission

6

on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is 'tantamount to a plea of guilty' because 'the guilt of the defendant [is] apparent on the basis of the evidence presented at the preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered.' (*Bunnell* v. *Superior Court* [(1975)] 13 Cal.3d [592,] 602 [(*Bunnell*)]; accord, *People v. Levey* [(1973)] 8 Cal.3d [648,] 651.)" (*People v. Wright* (1987) 43 Cal.3d 487, 496 (*Wright*).)

Here, in a simple case predicated on the search of defendant's vehicle by two law enforcement officers, defendant agreed to a joint statement of the officers' account of the search, together with his own version of how he came into possession of the drugs and how he intended to use them. His own statements as set forth in the stipulation provided the basis for his counsel's argument challenging the sufficiency of the evidence for transportation–that the evidence showed only unlawful possession, which would not suffice to prove transportation. The stipulation was notably lacking in any direct evidence of transportation beyond his possession of a relatively small quantity of drugs. As augmented by defendant's counsel, without objection by the prosecution, the stipulation provided there was no intent to distribute the drugs and the methamphetamine was of a quantity for personal use. Submissions are not considered slow pleas "[i]f it appears on the whole that the defendant advanced a substantial defense" (*Wright*, *supra*, 43 Cal.3d at p. 497) or where "the facts revealed . . . are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them" (*id*. at p. 496). Significantly, while convicted of transporting methamphetamine and oxycodone, and of possession of drug paraphernalia, defendant was acquitted of being under the influence and of driving on a suspended license.

True, the evidence contained in the stipulated factual statement was the only evidence used against defendant; the prosecutor did not present any additional evidence.

7

(See *Adams*, *supra*, 6 Cal.4th at p. 581.) The prosecutor even abandoned pursuing the counts charging being under the influence and driving on a suspended license, apparently because the stipulated facts failed to sustain those charges. Defendant's stipulation "implicitly and necessarily covered all the evidentiary facts required for a conviction and imposition of punishment" on the remaining charges. (*Little*, *supra*, 115 Cal.App.4th at p. 778.)

Although the facts in the stipulated statement were undisputed, defense counsel argued that the officers did not see defendant move the car and that the drugs were possessed for personal use. Defense counsel made "an argument to the court as to the legal significance to be accorded" to the stipulated facts. (*Wright, supra,* 43 Cal.3d at p. 496.) Defendant claims that counsel's argument was ineffective since transportation for personal use is included in a transportation charge. Defense counsel argued that there was not any evidence of transportation because the officers did not see defendant move the car. Defense counsel argued from the beginning that it was a possession case. His argument contested the sufficiency of the evidence for transportation, a substantial defense since "[e]vidence of unlawful possession is not evidence of transportation." (*People v. Kilborn* (1970) 7 Cal.App.3d 998, 1002-1003.) Thus, the submission was not tantamount to a guilty plea, and for that reason, "*Boykin-Tahl*" advisements were not required, defendant's arguments to the contrary notwithstanding. (See *People v. Sanchez* (1995) 12 Cal.4th 1, 29-30; *Wright*, *supra*, 43 Cal.3d at p. 496.) Defendant has failed to demonstrate a reasonable probability that he would have obtained a more favorable result absent his stipulation to the facts. Thus, the trial court's error in accepting the stipulated facts without compliance with *Bunnell* was harmless. Moreover, defendant's waiver of his right against self-incrimination was not required since he did not testify. (*Sanchez*, at p. 30.)

Apart from the *Boykin-Tahl* advisements, which are constitutionally mandated, courts in California are also compelled to give *Boykin-Tahl*-like advisements in all guilty

8

plea and submission cases as "a judicially declared rule of criminal procedure." (*People v. Barella* (1999) 20 Cal.4th 261, 266.). In *Bunnell*, *supra*, 13 Cal.3d at p. 605, our Supreme Court decreed that "in all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination."

Additionally, "[i]n cases in which there is to be a submission without a reservation by the defendant of the right to present evidence in his own defense he shall be advised of that right." (*Bunnell*, *supra*, 13 Cal.3d at p. 605.) "If a defendant does not reserve the right to present additional evidence and does not advise the court that he will contest his guilt in argument to the court, the defendant shall be advised of the probability that the submission will result in a conviction of the offense or offenses charged." (*Ibid*.) Finally, "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction . . . ." (*Ibid*.)

Because these "*Bunnell*" advisements are not constitutionally compelled, the failure to give them is reversible error only if it is reasonably probable the defendant would have obtained a more favorable result had he been advised concerning the consequences of a conviction and his rights to cross-examine and subpoena witnesses against him and his privilege against self-incrimination, and declined to submit the case. Defendant has not met his burden of demonstrating such a probability. Indeed, the facts suggest the contrary.

Initially, we note that defendant's waiver of his right against self-incrimination was not required. "For submissions not tantamount to a guilty plea, a trial court's failure to advise the defendant of his right against self-incrimination is implicated only to the extent defendant *surrendered* the right." (*Sanchez*, *supra*, 12 Cal.4th at p. 30.) Here, defendant never surrendered his right; he chose not to testify. Thus, there was no requirement of a personal, on-the-record waiver. (*Ibid*.) With respect to the waiver of

jury trial, defense counsel informed the court that he had discussed with defendant "waiving his right to a jury trial and doing a court trial on this matter." The court advised defendant that based on the court's understanding of the facts, he would likely be found guilty. Defendant professed his understanding of the right to jury trial, as the court had earlier explained to another litigant, and defendant affirmed his decision to waive the right. Counsel then recited the stipulation, which was little more than an account of defendant's various admissions to law enforcement at the scene of his detention. Notwithstanding the court's dire prediction, defendant was acquitted of two counts. He received probation. It is hard to believe that defendant would have obtained a more favorable result had he been given the required advisements. In any event, he has not met his burden of demonstrating such.

## II

Defendant challenged the sufficiency of the evidence to support his convictions for transportation, specifically the element of carrying or conveying. Because the recent amendment of sections 11352 and 11379 added a definition of "transport" to mean "transport for sale," we must first discuss defendant's entitlement to the benefit of the amendment. Although defendant sought the benefit of the amendment to section 11379 only and this court directed briefing on whether section 11379, as amended, affected the disposition of his conviction for violating section 11379 only, the same statutory change was made at the same time to section 11352. Defendant was convicted of violating section 11352, transportation of oxycodone. Thus, we include a discussion of that section as well since defendant challenged the sufficiency of the evidence to support that conviction.

When defendant committed his current transportation of oxycodone offense, section 11352, subdivision (a) and former subdivision (b) provided:

"(a) Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport,

10

import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years.

"(b)  Notwithstanding the penalty provisions of subdivision (a), any person who transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, six, or nine years."  (Stats. 2011, ch. 15, § 154.)

Effective January 1, 2014, section 11352 was amended to delete "for sale" after the word "transports" in subdivision (b) and to add two subdivisions:

"(c)  For purposes of this section, 'transports' means to transport for sale.

"(d)  This section does not preclude or limit the prosecution of an individual for aiding and abetting the commission of, or conspiring to commit, any act prohibited by this section."  (Stats. 2013, ch. 504, § 1.)

When defendant committed his current transportation of methamphetamine offense, section 11379, subdivision (a) and former subdivision (b) provided:

"(a)  Except as otherwise provided in subdivision (b) and in Article 7 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled

11

substance which is (1) classified in Schedule III, IV, or V and which is not a narcotic drug, except subdivision (g) of Section 11056, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), (20), (21), (22), and (23) of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, (4) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (5) specified in subdivision (d) or (e), except paragraph (3) of subdivision (e), or specified in subparagraph (A) of paragraph (1) of subdivision (f), of Section 11055, unless upon the prescription of a physician, dentist, podiatrist, or veterinarian, licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of two, three, or four years.

"(b) Notwithstanding the penalty provisions of subdivision (a), any person who transports for sale any controlled substances specified in subdivision (a) within this state from one county to another noncontiguous county shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, six, or nine years." (Stats. 2011, ch. 15, § 174.)

Effective January 1, 2014, section 11379 was amended to delete "for sale" after the word "transports" in subdivision (b) and to add two subdivisions:

"(c) For purposes of this section, 'transports' means to transport for sale.

"(d) Nothing in this section is intended to preclude or limit prosecution under an aiding and abetting theory or a conspiracy theory." (Stats. 2013, ch. 504, § 2.)

Defendant's convictions were not final on January 1, 2014, the effective date of the amendment. (*People v. Vieira* (2005) 35 Cal.4th 264, 306 [judgment not final until time for petitioning for writ of certiorari in U.S. Supreme Court has passed].) Both sections 11352 and 11379 now require proof that the defendant transported the controlled substances for sale, rather than just transported the controlled substances under the case law interpretation of the former statute. Previously, "transport" did not have a technical meaning peculiar to the law and meant " 'to carry or convey from one place to another.' "

12

(*People v. LaCross* (2001) 91 Cal.App.4th 182, 185 (*LaCross*).)  The movement required was the movement of the controlled substance " 'from place to place, rather than merely held at one location.' " (*Id.* at p. 186; see also *People v. Ormiston* (2003) 105 Cal.App.4th 676, 684-685 (*Ormiston*) ["the requirement of volitional transport of methamphetamine from *one location to another* avoids any unwarranted extension of the statute to restrained minimal movement within a residence or other confined area that does not facilitate trafficking, distribution or personal use of drugs"].)

Legislative amendments are presumed to apply prospectively unless stated otherwise or extrinsic sources reflect clearly that the Legislature intended the amendment to apply retroactively.  (Pen. Code, § 3; *In re E.J.* (2010) 47 Cal.4th 1258, 1272; *People v. Vinson* (2011) 193 Cal.App.4th 1190, 1195 (*Vinson*).)  In amending sections 11352 and 11379, the Legislature did not state expressly whether the amendment applied prospectively or retroactively.  Thus, we review the legislative history for legislative intent.  (*E.J.*, *supra*, 47 Cal.4th at p. 1272.)

From the beginning, the intent of Assembly Bill No. 721 was to eliminate the possibility that a person could be convicted of transportation for transporting a small amount of controlled substance for personal use, noting that prosecutors had been double-charging defendants for both possession and transportation of controlled substances even when there was no evidence of intent to sell or involvement in drug trafficking.  (See Assem. Com. on Public Safety, comments on Assem. Bill No. 721 (2013-2014 Reg. Sess.) Feb. 21, 2013, pp. 2-3; see also Sen. Com. on Public Safety, comments on Assem. Bill No. 721 (2013-2014 Reg. Sess.), for hearing on June 11, 2013, pp. 4-5.)  Because courts had interpreted "transport" to mean any movement of the controlled substance (*Ormiston*, *supra*, 105 Cal.App.4th at p. 683 [walking]; *LaCross, supra,* 91 Cal.App.4th at p. 183 [riding a bicycle]), Assembly Bill No. 721 was meant to "correct the unwarranted interpretation that punishes an individual much more harshly if he is arrested walking down the street in possession of a small amount of illegal drugs than an

13

individual who is arrested with the exact same quantity of drugs, but who is just sitting on a bench," to correct the " 'unjust' and 'absurd' result foreseen long ago by Justice Mosk [in his dissent in *People v. Rogers* (1971) 5 Cal.3d 129, 145-146], and [to provide] that similarly situated individuals should be treated similarly by the law." (Sen. Com. on Public Safety, comments on Assem. Bill No. 721, *supra*, at p. 7.)

*In re Estrada* (1965) 63 Cal.2d 740 held that "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*Id.* at p. 748.) *Vinson*, *supra*, 193 Cal.App.4th 1190 considered whether the amendment to Penal Code section 666, requiring proof of at least three prior convictions, not just one, was retroactive. (*Vinson*, at pp. 1193-1194.) Following *Estrada*, *Vinson* reasoned that the amendment "had the effect of mitigating punishment by raising the level of recidivism required before a defendant can be sentenced to state prison." (*Vinson*, at p. 1199.) Applying the amendment retroactively was consistent with the legislative intent "to save money and space in order to partially offset the higher costs and inmate population occasioned by increasing sentences for sexual predators." (*Ibid*.)

Here, the amendment makes it less likely that defendant will be convicted and punished for transportation of oxycodone (§ 11352) and transportation of methamphetamine (§ 11379). We conclude the Legislature intended that the amendment applies retroactively. Thus, defendant is entitled to the benefit of the amendment. We apply the new law in the discussion that follows.

## III

In his opening brief, defendant challenged the evidence to support his conviction for transportation of methamphetamine (§ 11379), and in his supplemental brief, he claimed the new law affected the analysis of the evidence for that conviction. In his opening brief, defendant also challenged the evidence to support his conviction for transportation of oxycodone (§ 11352), but in his supplemental brief, he did not claim the

14

new law affected the analysis of the evidence for that conviction. He should have, as will be seen.

Defendant was sitting in a car parked in the driveway of a vacant house, and the car lights were on. Defendant had just driven to the location, explaining a friend lived behind the vacant house. He had been trying to hide the drugs when the officer approached. Defendant was under the influence of methamphetamine. A methamphetamine pipe was found in his pants pocket, a small baggie of white crystalline substance was found under the driver's seat, and nine 325-milligram Percocet tablets were found scattered under the seat on the floorboard. Defendant knew the white substance was methamphetamine, stating that he had just purchased a "20 sack"or 0.2 gram of methamphetamine "that date." Defendant intended to use the methamphetamine but planned to drop off the Percocet at a friend's house. A laboratory test revealed that the small baggie contained 0.36 gram of methamphetamine and that the Percocet tablets in fact contained oxycodone.

At arraignment on the complaint deemed an information, defense counsel claimed defendant's defense to the two transportation charges was personal use so that defendant would be eligible for drug treatment. The court commented that defense counsel was "just arguing that [he thought] there should be an exception [to the transportation charges] because it's personal use as oppose[d] to the issue of transportation[.]" Defense counsel responded that he was thinking of a case that "talks about trafficking, importing, or inserting illicit drugs into the stream of commerce."

At the court trial, the parties submitted and "agree[d] that the Court may enter its verdict and judgment" on a stipulated factual statement "presented by both the defense and the People." The factual statement was signed by both the prosecutor and defense counsel. At the court's request, the prosecutor read the stipulated factual statement into the record. At the conclusion of the prosecutor's reading of the factual statement, the court asked defense counsel whether he had any additional stipulations. Defense counsel

15

stated that the amount of methamphetamine found was an amount for personal use with no intent to distribute. Defense counsel did not claim that the Percocet (oxycodone) was for defendant's personal use or that he had no intent to distribute it. The court did not ask the prosecutor whether he agreed to the additional stipulation.

The parties argued their respective positions on the evidence. The prosecutor claimed defendant drove to the location and intended to go somewhere else with both the methamphetamine and the oxycodone, establishing both transportation charges. Defense counsel claimed there was no evidence "where the drugs came from, whether they were there, the deal went down there, or where he was before," and there was no evidence that the officers saw defendant drive to the location. Defense counsel added that the "amounts involved are for personal use. And I'm asking the court, number two, to find that this is not transportation based upon the fact that this is for personal use and there . . . was no danger that this was going to be distributed to the community at large." The court responded, "[O]n the personal use I can understand the argument on the 11379 charge, but we have evidence, the statement of [defendant] about -- he was going to transport to furnish somebody else." Defense counsel replied that "[defendant] may have the intent to do it but that hadn't happened."

The court noted defense counsel's "argument" that there had to be proof "of intent to sell or distribute" for transportation but determined correctly that the "[then] current state of the law [of] transportation d[id] not require an intent to sell or distribute." The court noted the then current law required only minimal movement. Under the circumstances and law at the time, the court reasonably concluded that defendant had driven the car with the methamphetamine and oxycodone to that location.

As previously discussed, the offense of transportation now requires that the prosecution prove defendant transported the controlled substance for sale. Defendant "is entitled to have the jury decide every essential element of the crime . . . charged against him, no matter how compelling the evidence may be against him. [Citations.]"

16

(*Figueroa*, *supra*, 20 Cal.App.4th at p. 71.) Remand for retrial is not barred by the double jeopardy or the ex post facto clause. (*Id.* at pp. 71-72 & fn. 2.)

The People claim that "retrial [of the section 11379 charge] would be inappropriate in this specific case because of the apparent stipulation at trial that [defendant] did not transport the methamphetamine for purposes of sale." We reject the People's concession that the prosecutor stipulated the methamphetamine was not transported for sale or distribution but instead for personal use. The parties entered into a written stipulation of the facts and agreed that the court would consider the facts in the written stipulation for purposes of the court trial. The prosecutor did not stipulate either orally or in writing to defense counsel's additional "stipulation." And the court recognized defense counsel's additional "stipulation" for what it was–argument–which did not reflect the then current state of the law. The prosecutor was not obligated to agree or object to the irrelevant fact inserted unilaterally by defense counsel. "Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence." (*Figueroa*, *supra*, 20 Cal.App.4th at p. 72.)

Defendant was under the influence of methamphetamine when he was arrested. He claimed he bought 0.2 gram of methamphetamine. The lab test, however, revealed that defendant had 0.36 gram of methamphetamine at the time of his arrest. There was no evidence with respect to whether the quantity defendant possessed was enough to show defendant intended to sell because it was not an issue at the time of trial. We will remand for retrial on the section 11379 violation.

Remand is also required for defendant's violation of section 11352. Defendant's violation under the amended version of the law requires a finding that the oxycodone was transported for sale. While defendant claimed he planned to "drop[] off" the Percocet

17

tablets at a friend's house, the issue whether he intended to sell all or some of the tablets was not relevant at the time of trial and was not determined.

## DISPOSITION

Defendant's convictions for transportation of oxycodone (§ 11352; count II) and transportation of methamphetamine (§ 11379; count I) are reversed and remanded.  In all other respects, the judgment is affirmed.

                                                  _____RAYE_____, P. J.

We concur:

_____ROBIE_____, J.

_____HOCH_____, J.