Filed 2/22/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMNANG SEK,<br><br>    Defendant and Appellant. | B309003<br><br>(Los Angeles County<br>Super. Ct. No. NA087661)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>PETITION FOR REHEARING<br>(NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in the above-entitled matter filed on February 1, 2022 is modified as follows:

1.    On page 17, the following paragraph is deleted:

"Sek and the Attorney General agree, as do we, that, under the principles of *Estrada* described above (Discussion part A.1, *ante*), the law applies retroactively to defendants like Sek whose convictions were not yet final when the law became effective January 1, 2022."

The deleted paragraph is replaced with the following:

Sek and the Attorney General agree, as do we, that, under the principles of *Estrada* described above (Discussion part A.1, *ante*), Assembly Bill No. 518 applies retroactively to defendants like Sek

whose convictions were not yet final when the law became effective January 1, 2022.

2.     On page 18, the following two sentences are deleted:
"We agree with Sek that this law, as an ameliorative statute that reduces potential sentences for criminal defendants, applies retroactively under *Estrada* principles to defendants like Sek whose cases were not yet final when the law became effective.  The court must apply the new law in any resentencing proceedings in this case."

The deleted sentences are replaced with the following:

These requirements "shall apply to sentencings occurring after the effective date of" Senate Bill No. 81.  (Stats. 2021, ch. 721, § 1, enacting § 1385, subd. (c)(7).)  Because any resentencing in this case will take place after Senate Bill No. 81 became effective on January 1, 2022, we agree with Sek that the court must apply the new law in any such proceeding.

This modification does not constitute a change in the judgment.

Respondent's petition for rehearing filed on February 14, 2022 is denied.

_____

ROTHSCHILD, P. J.          CHANEY, J.          BENDIX, J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309003 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA087661) |
| v. | |
| SAMNANG SEK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed in part, reversed in part.

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The Legislature recently enacted Assembly Bill No. 333 (2021−2022 Reg. Sess.) (Assembly Bill No. 333), which altered both the substantive and procedural law regarding gang enhancements under Penal Code[1] section 186.22.  Under the new law, in order to prove that the defendant committed a crime for the benefit of a criminal street gang, the prosecution must show that the benefit to the gang was "more than reputational."  (Stats. 2021, ch. 699, § 3, enacting § 186.22, subd. (g).)

Defendant and appellant Samnang Sek, who was convicted of attempted murder and other offenses for his role in a gang shooting, contends that this law applies retroactively to him.  He argues that because the jury instructions did not reflect this change in the law, the jury's findings on the gang enhancements in his case must be reversed.  We agree.

## FACTS AND PROCEEDINGS BELOW

In 2012, a jury convicted Sek of (counts 1 and 5) attempted murder (§§ 187, 664), (count 2) shooting at an occupied vehicle (§ 246), (count 3) assault with a semiautomatic firearm (§ 245, subd. (b)), and (count 4) being an accessory after the fact (§ 32). The jury found that Sek committed all these crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)) and found that both counts of attempted murder were willful, deliberate, and premeditated (§ 664, subd. (a)), and that a principal discharged a firearm in committing the crimes (§ 12022.53, subds. (c) & (e)).

As we explained in more detail in our prior opinion in this case (*People v. Sek et al.* (Apr. 17, 2015, B251196, B254949,

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

B254954) [nonpub. opn.]),[2] Sek drove in pursuit of the victim, allowing his passenger, codefendant and fellow gang member Terry My, to fire several shots at the victim's car.  We reversed one count of attempted murder because the trial court erroneously instructed the jury on a "kill zone" theory, and we vacated the jury's finding that the second count of attempted murder was committed willfully, deliberately, and with premeditation because the information did not include this allegation.  (See *ibid.*)  We otherwise affirmed the judgment and remanded the case for further proceedings.  (*Ibid.*)

On remand, the trial court sentenced Sek to 15 years to life in prison for count 2, firing at an occupied motor vehicle for the benefit of a criminal street gang.  (§§ 246, 186.22, subd. (b)(4)(B).)  The court imposed a concurrent sentence of 16 months in prison for count 4, being an accessory (§ 32), along with a three-year gang enhancement (§ 186.22, subd. (b)(1)(A)).  The court stayed under section 654 the sentences for (count 1) attempted murder and (count 3) assault with a semiautomatic firearm.  The stayed sentence for attempted murder consisted of a base term of nine years (§ 664, subd. (a)), plus a 10-year gang enhancement (§ 186.22, subd. (b)(1)(C)), plus 20 years for discharging a firearm (§ 12022.53, subds. (c) & (e)).  The stayed sentence for assault with a semiautomatic firearm consisted of a base term of nine years (§ 245, subd. (b)), plus 10 years for a gang enhancement.  (§ 186.22, subd. (b)(1)(C).)

---

[2] The Supreme Court granted review of the opinion pending its decision in *People v. Canizales* (2019) 7 Cal.5th 591, then subsequently dismissed review.  (*People v. Sek* (Sept. 11, 2019, S226721).)

3

## DISCUSSION

### A.     *Assembly Bill No. 333*

A defendant who commits a felony "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members" is subject to increased punishment upon conviction. (§ 186.22, subd. (b)(1).)  As noted above, Sek's sentence included enhancements under this provision.  It also included a 20-year firearm enhancement for discharging a firearm that applied only because Sek acted for the benefit of a gang.  (See § 12022.53, subds. (c) & (e)).[3]  In addition, because the jury convicted him of firing into an occupied vehicle for the benefit of a street gang, he was subject to a sentence of 15 years to life under section 186.22, subdivision (b)(4)(B).  Without the gang finding, the maximum sentence for this offense would have been seven years.  (See § 246.)

After the court imposed sentence and while his appeal was pending, the Legislature enacted Assembly Bill No. 333, which amended section 186.22 to impose new substantive and procedural requirements for gang allegations.  Most notably, the law defined "to benefit, promote, further, or assist" as "to provide a common benefit to members of a gang where the common benefit is more than reputational.  Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g).)  In addition, the law created a stricter requirement for proof of "a pattern of criminal gang activity," which is necessary to prove that the group with

---

[3] The trial court stayed the sentence on the enhancements for attempted murder and assault with a firearm under section 654.

4

which the defendant is associated is indeed a criminal street gang. (See § 186.22, subd. (f).) Previously, the prosecution needed to prove only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another. (See former § 186.22, subd. (e).) Under the newly amended law, the offense with which the defendant is currently charged cannot be used as one of the two predicate offenses. (§ 186.22, subd. (e)(2).) In addition, both predicate offenses must have been committed "within three years of the date the current offense is alleged to have been committed," by gang "members," and must have been for the "common[ ] benefit[ ] [of] a criminal street gang." (§ 186.22, subd. (e)(1).) Finally, under Assembly Bill No. 333, the defendant may request a bifurcated trial, in which the defendant is first tried for the underlying offense, and only upon conviction is tried for any gang enhancements. (§ 1109, subd. (a).)

Sek contends that the amendments changing the definition of "benefit of a criminal street gang" apply retroactively to his case, and that, because the jury convicted him under the prior version of the law, we must reverse the convictions on the gang enhancements. The Attorney General agrees that the amendments apply retroactively but argues that we should affirm the conviction because the error was harmless beyond a reasonable doubt. We agree with Sek and reverse the gang enhancements.

### 1. *Retroactivity of the new law*

Ordinarily, "a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).) In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), however,

our Supreme Court recognized an exception to this rule. The court explained that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at p. 745.)

In subsequent years, the court has expanded the application of this doctrine broadly "to statutes changing the law to the benefit of defendants." (*Tapia*, *supra*, 53 Cal.3d at p. 301.) Thus, the retroactivity principle applies to ameliorative changes in enhancements as well as to substantive offenses (*People v. Nasalga* (1996) 12 Cal.4th 784, 792), and to changes in the law that merely allow for a possibility of reduced punishment (*People v. Francis* (1969) 71 Cal.2d 66, 76). It also applies where a new law decriminalizes the defendant's conduct entirely. (*People v. Rossi* (1976) 18 Cal.3d 295, 302.)

Most relevant to this case, the Supreme Court in *Tapia* held that the presumption of retroactivity applies to laws that change the substantive requirements for an enhancement in the defendant's favor. (*Tapia*, *supra*, 53 Cal.3d at pp. 300–301.) In *Tapia*, the electorate had recently passed an initiative requiring proof of intent to kill for certain special circumstance allegations.

6

Because the initiative "redefine[d], to the benefit of defendants, conduct subject to criminal sanctions" (*id.* at p. 301), the court held that it applied retroactively.

Appellate courts have applied this principle widely. For example, in 2010, the Legislature enacted a law limiting felony petty theft to defendants with three prior theft convictions rather than only one. (Assembly Bill No. 1844 (Reg. Sess. 2009–2010) Stats. 2010, ch. 219, § 15.) In *People v. Vinson* (2011) 193 Cal.App.4th 1190 (*Vinson*), the court held that the law applied retroactively because "akin to adding an element to a crime or an enhancement," the amendment "benefits a defendant by making it less likely that he or she will qualify for felony-level punishment." (*Id.* at p. 1197.) Similarly, in 1992, the Legislature enacted a law limiting the application of a sentence enhancement based on the amount of property loss. Previously, the enhancement applied if a defendant committed a felony causing a loss in excess of $25,000; under the new law, a $50,000 loss was required. (*People v. Roberts* (1994) 24 Cal.App.4th 1462, 1465.) In *Roberts*, the court held that because the law effectively reduced the punishment to which the defendants in the case were subject, it applied retroactively under *Estrada.* (*Id.* at p. 1466.) In *People v. Figueroa* (1993) 20 Cal.App.4th 65, the court held that a statute redefining an enhancement for committing drug offenses near a school applied retroactively. Under the statute in effect when the defendant committed the crime, the prosecution was required to prove only that the offense was committed within 1,000 feet of a school. The statute was later amended to add a requirement that school be in session or minors nearby at the time of the offense. (*Id.* at p. 69.)

At least one of the amendments in Assembly Bill No. 333 clearly meets the requirements for retroactivity as outlined by these cases: To prove that a defendant committed a felony "for the benefit

7

of, at the direction of, or in association with a criminal street gang," (§ 186.22, subd. (b)(1)) the new law requires the prosecution to show that "the common benefit [to the gang] is more than reputational." (§ 186.22, subd. (g), enacted by Assembly Bill No. 333 (Stats. 2021, ch. 699, § 3).) The law thus redefines the enhancement for the benefit of the defendant. Previously, a defendant who had committed an offense to benefit the reputation of a criminal street gang, but with no other benefit, was subject to the enhancement. (See *People v. Albillar* (2010) 51 Cal.4th 47, 63 [under former section 186.22, subd. (b)(1), "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' "].) Now, he cannot be. The law has "redefine[d], to the benefit of defendants, conduct subject to criminal sanctions" (*Tapia*, *supra*, 53 Cal.3d at p. 301), and it therefore applies retroactively under *Estrada*.[4]

### 2. *Harmless error*

The Attorney General concedes that Assembly Bill No. 333 applies retroactively, but contends that reversal is not required because the error was harmless. We disagree.

By requiring proof for a gang enhancement that the benefit to the gang was more than reputational, Assembly Bill No. 333 essentially adds a new element to the enhancement. When jury instructions are deficient for omitting an element of an offense, they implicate the defendant's federal constitutional rights, and we review for harmless error under the strict standard of *Chapman v.*

---

[4] Because we reverse the gang enhancement findings on the basis of this change alone, we need not and do not decide whether the other portions of Assembly Bill No. 333 also apply retroactively.

*California* (1967) 386 U.S. 18 (*Chapman*).  (*People v. Flood* (1998) 18 Cal.4th 470, 502–503; *People v. Lewis* (2006) 139 Cal.App.4th 874, 884.)  The Attorney General concedes that this standard applies here, where the new element to the offense is introduced through the retroactive application of a new law, and we see no reason to disagree.  Under the *Chapman* standard, reversal is required unless "it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict."  (*People v. Flood, supra*, 18 Cal.4th at p. 504.)

The Attorney General argues that the error was harmless under this standard, noting that the prosecution's expert witness testified about benefits to the gang that were not merely reputational.  The expert testified that gang members may commit crimes to retaliate against rival gangs, to defend and to try to expand their territory.  In addition, according to the expert, gang shootings instill fear in the community, giving the gang "free [rein] to commit crimes in that area without any . . .  repercussions of their criminal acts," diminishing the gang members' "chance of them getting caught by the police because of the community's fear of retaliation . . . by the gang."  If community members are afraid, they will be "less likely to report crimes committed by gang members."

But in order to prove harmless error under the *Chapman* standard, it is not enough to show that substantial or strong evidence existed to support a conviction under the correct instructions.  As the United States Supreme Court explained in *Sullivan v. Louisiana* (1993) 508 U.S. 275, "the question . . . is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. . . . The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty

verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Id.* at p. 279.)

Courts have found harmless error under this standard where the missing element from an instruction was uncontested or proved as a matter of law. For example, in *People v. Merritt* (2017) 2 Cal.5th 819, the trial court omitted the elements of robbery from the jury instructions, but the court held that the error was harmless because the only contested issue at trial was the identity of the defendant. (*Id.* at p. 832.) "Defendant knew what the elements of robbery were, and he had the opportunity to present any evidence he wished on the subject. '[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.' " (*Ibid.*, quoting *Neder v. United States* (1999) 527 U.S. 1, 17.) Similarly, in *Vinson*, the court affirmed the defendant's conviction of petty theft with a prior theft conviction even though the law had changed after trial to require the proof of three prior convictions, rather than one. (See *Vinson*, *supra*, 193 Cal.App.4th at p. 1200.) The defendant conceded that he had suffered two prior convictions, and his attorney stipulated at trial to a third conviction. Thus, there was no dispute as to whether the new element in the law was proved. (See *ibid.*)

In this case, the basis of the jury's verdict is not so clear. The prosecution's expert testified about several ways in which a crime could benefit a criminal street gang, but one of these was reputational. When asked whether a hypothetical crime similar to the one Sek committed could "enhance the reputation" of a gang, the expert answered, "Yes." The expert went on to state that this

type of crime "enhances not only the individual gang members . . . but enhances the status and their reputation of the . . . gang as a whole." In closing arguments, the prosecutor argued that Sek's crime benefits the gang because "[t]hey want you to know who they are." Although there was a great deal of evidence of benefits to the gang that went beyond reputational, we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true. Thus, the instructional error on this question was not harmless under the *Chapman* standard.

Our decision does not bar the prosecution from retrying Sek on the gang enhancements upon remand. "Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial. (*People v. Figueroa*[*, supra,*] 20 Cal.App.4th [at p.] 72, fn. 2 . . . ; see *Burks v. United States* (1978) 437 U.S. 1, 18 . . . .) ' "Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence." [Citation.]' (*People v. Ramos* (2016) 244 Cal.App.4th 99, 103 . . . .)" (*People v. Monk* (2018) 21 Cal.App.5th Supp. 1, 7–8; accord, *People v. Figueroa, supra*, 20 Cal.App.4th at pp. 71–72.)

### B. *Other Allegations of Error*

Sek alleges several other errors in sentencing, some that he claims the trial court committed when imposing sentence, and others that result from the retroactive application of new law. Although our resolution of the gang enhancement issue requires reversing Sek's sentence and resentencing him (after a possible new

11

trial on the gang enhancements), we discuss these issues briefly in the interest of clarity and of forestalling future disputes.

### 1. *Imposition of both firearm and gang enhancements*

If a defendant commits a felony for the benefit of a criminal street gang, the defendant may be subject to a firearm enhancement under section 12022.53 if any principal to the crime used a firearm. (See § 12022.53, subd. (e)(1).) In cases where the defendant did not personally use a firearm, however, the court may not impose a gang enhancement under section 186.22, subdivision (b) in addition to the firearm enhancement. (See § 12022.53, subd. (e)(2).) In this case, the trial court imposed both a firearm enhancement (§ 12022.53, subds. (c) & (e)(1)) and a gang enhancement (§ 186.22, subd. (b)(1)(C)) in Sek's sentence for attempted murder. But as all parties agree, Sek did not personally use the gun. Instead, his codefendant My was the shooter. Thus, the trial court erred by including a gang enhancement in the sentence for attempted murder.

The trial court also included a 10-year gang enhancement under section 186.22, subdivision (b)(1)(C) for Sek's conviction of assault with a semiautomatic firearm (§ 245, subd. (b)). But as Sek points out, an enhancement under section 186.22, subdivision (b)(1)(C) applies only if the substantive offense is a violent felony as defined under section 667.5, subdivision (c). Assault with a semiautomatic firearm is not so defined.[5] (See § 667.5, subd. (c).) The offense is defined as a serious felony, however (see § 1192.7, subd. (c)(31)), and as a result, the trial court

---

[5] If Sek had personally used a firearm in the offense, the crime would have been a violent felony under section 667.5, subdivision (c)(8).

12

should have imposed a five-year enhancement under section 186.22, subdivision (b)(1)(B) instead of the 10-year enhancement.

## 2. *Restitution and parole revocation fines*

The trial court imposed a restitution fine of $4,500 under section 1202.4, subdivision (b), and a parole revocation fine of $4,500 under section 1202.45, subdivision (a). The latter fine was suspended pending the revocation of Sek's parole. Sek contends that the court abused its discretion in imposing these fines because the court calculated the amount of the fine according to a formula applicable at the time of sentencing, rather than the formula that applied at the time he committed the crimes. We conclude that Sek forfeited the issue, and that his attorney did not provide ineffective assistance of counsel by not objecting to the fine.

Because "the imposition of restitution fines constitutes punishment, . . . [it] is subject to the proscriptions of the ex post facto clause and other constitutional provisions." (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Thus, the court was required to apply the law in effect when Sek committed the offenses in 2011, without subsequent amendments, in determining Sek's restitution fine. (See *ibid.*)

In most relevant respects, the restitution fine statute is substantially the same now as it was in 2011. Then as now, except where there are "compelling and extraordinary reasons for not doing so," the trial court must impose a restitution fine in all cases where the defendant is convicted of a crime. (§ 1202.4, subd. (b); Stats. 2010, ch. 351, § 9 [enacting version of § 1202.4 in effect in 2011].) The court has discretion to set the amount of the fine "commensurate with the seriousness of the offense," up to a maximum of $10,000 in felony cases. (§ 1202.4, subd. (b)(1); Stats. 2010, ch. 351, § 9.) The statute also provides a formula that

13

the court may (but is not required to) use in calculating the amount of the fine, consisting of the minimum fine "multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (Stats. 2010, ch. 351, § 9; § 1202.4, subd. (b)(2).) In performing this calculation, the court may not include felony counts for which punishment is stayed pursuant to section 654. (*People v. Le* (2006) 136 Cal.App.4th 925, 934 (*Le*).) The court must impose a parole revocation fine equal to the amount of the restitution fine, suspended pending the possible revocation of the defendant's parole. (§ 1202.45, subd. (a).)

The statute has changed in one important way since 2011, however. At the time Sek committed the offense, the minimum fine was $200. (See Stats. 2010, ch. 351, § 9.) The Legislature subsequently amended Section 1202.4 to increase that amount to $240 in 2012, $280 in 2013, and to the current amount of $300 beginning in 2014. (Stats. 2011, ch. 358, § 1.)

Sek contends that the trial court meant to apply the formula in section 1202.4, subdivision (b)(2) to determine the amount of the fine, but erred by using $300 as the minimum amount rather than $200. At the sentencing hearing, the court imposed a "$300 per year restitution fine."

Sek forfeited this claim by failing to object to the amount of the fine in the trial court: "[T]he rule of forfeiture is applicable to ex post facto claims [citation], particularly where any error could easily have been corrected if the issue had been raised at the sentencing hearing." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189 (*Martinez*).)

14

Sek also contends that his attorney rendered ineffective assistance by failing to call attention to the change in the minimum fine.  In similar cases, appellate courts have indeed reduced fines where an attorney failed to object to the incorrect application of the formula for restitution fines.  (See, e.g., *Le, supra,* 136 Cal.App.4th at pp. 935–936; *Martinez, supra,* 226 Cal.App.4th at pp. 1188–1190.)

But in order to prevail on a claim of ineffective assistance of counsel, a defendant must show not only that his attorney's performance was defective, but also that he suffered prejudice as a result.  (*Le, supra,* 136 Cal.App.4th at p. 935.)  Sek cannot make such a showing.  The formula in section 1202.4, subdivision (b)(2) calls for the court to calculate the minimum fine, "multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."  The trial court appears to have multiplied $300 by the minimum number of years Sek was ordered to serve, 15, to arrive at a fine of $4,500.  But the court did not multiply the fine by two to account for the number of felony counts of which Sek was convicted.  In addition to his conviction of firing into an occupied vehicle for which the court imposed the 15-year minimum sentence, Sek was also convicted of being an accessory after the fact.[6]

If the court had correctly applied the formula, it would have multiplied $200 (the minimum fine as of 2011) by 15 for the minimum number of years Sek was ordered to serve, and by two for the number of felony counts of which he was convicted, and arrived at a total fine of $6,000.  Sek's attorney did not prejudice

---

[6] Sek's convictions of attempted murder and assault with a semiautomatic firearm are not included in the calculation because the trial court stayed the sentence on those offenses under section 654.  (See *Le, supra,* 136 Cal.App.4th at p. 934.)

him by failing to object to a $4,500 fine.  This is not the same situation as in *Martinez*, where the court stated that "[w]e cannot conceive of any tactical reason for counsel's failure to object." (*Martinez, supra,* 226 Cal.App.4th at p. 1190.)

### 3.    *Errors in Presentence Credits and Abstract of Judgment*

Sek contends that the trial court erred by failing to award a sufficient number of credits for time served prior to sentencing.  The Attorney General agrees, as do we.

"[W]hen a prison term already in progress is modified as the result of an appellate sentence remand, the sentencing court must recalculate and credit against the modified sentence *all actual time* the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody."  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.)  The court must also calculate conduct credits for the period before the original sentencing hearing.  (*Id.* at p. 30.)  The agency to which the defendant is committed—in this case the Department of Corrections and Rehabilitation—calculates and applies conduct credit for time following the original sentencing hearing.  (*Id.* at pp. 30–31, 37.)

In this case, the trial court did not update the defendant's credits for actual time served between the original sentencing hearing and the resentencing hearing.

Sek also notes that the record includes several clerical errors. A minute order incorrectly deleted the trial court's order staying the sentence for attempted murder pursuant to section 654.  The same minute order misstated the length of the firearm enhancement for attempted murder and misreported the name of the attorney who represented Sek at the sentencing hearing.

16

#### 4. *Amendment to sentencing under section 654*

Section 654 prohibits multiple punishment for any single act or omission. If a single action or course of conduct by a defendant violates multiple laws, "the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) Until recently, the law required trial courts to impose sentence "under the provision that provides for the longest potential term of imprisonment." (Former § 654.) In 2021, however, the Legislature enacted Assembly Bill No. 518 (Stats. 2021, ch. 441), which removes the requirement to impose the longest prison term. As the preamble to the bill explains, it allows "an act or omission that is punishable in different ways by different laws to be punished under either of those provisions." (*Ibid.*)

Sek and the Attorney General agree, as do we, that, under the principles of *Estrada* described above (Discussion part A.1, *ante*), the law applies retroactively to defendants like Sek whose convictions were not yet final when the law became effective January 1, 2022.

In this case, the jury convicted Sek of firing into an occupied vehicle (§ 246) and attempted murder (§§ 187, 664), two crimes based on a single course of conduct. Because the former crime carried a longer potential sentence than the latter, the trial court stayed the sentence for attempted murder. In any future sentencing hearing, the trial court will have discretion under the new version of section 654 to sentence Sek under either provision.

#### 5. *Senate Bill No. 81*

In 2021, the Legislature enacted Senate Bill No. 81, which amended section 1385 to specify factors that the trial court must

17

consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice.  (Stats. 2021, ch. 721, § 1.)  Most notably, under the newly enacted subdivision (c)(2)(C) of section 1385,[7] if "[t]he application of an enhancement could result in a sentence of over 20 years," the trial court "shall . . . dismiss[ ]" the enhancement.  (Stats. 2021, ch. 721, § 1.)  We agree with Sek that this law, as an ameliorative statute that reduces potential sentences for criminal defendants, applies retroactively under *Estrada* principles to defendants like Sek whose cases were not yet final when the law became effective.  The court must apply the new law in any resentencing proceedings in this case.

---

[7] Senate Bill No. 81 appears to include a clerical error. The text of the law refers to certain subparagraphs (A) to (I) as part of subdivision (c)(2) of section 1385, but the text of the bill lists these subparagraphs under subdivision (c)(3).  (Stats. 2021, ch. 721, § 1.)  We describe the provision at issue here as subdivision (c)(2)(C) because that appears to be where the Legislature intended to codify it.

## DISPOSITION

The gang and firearm enhancements in all counts are stricken. In addition, the finding in count 2 that the offense of shooting at an occupied vehicle was committed for the benefit of a criminal street gang is reversed. In all other respects, the judgment is affirmed. On remand, the prosecution shall have the option to retry the defendant on the gang allegations. The trial court shall resentence the defendant and correct the clerical errors described in Discussion part B.3.

CERTIFIED FOR PUBLICATION.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.

19