Filed 3/18/22 (3/1/22 mod order & unmodified opinion except for privacy redactions per 3/1/22 mod order attached)

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E072463 |
| Plaintiff and Respondent, | (Super.Ct.Nos. INF1500253 & INF1500502) |
| v. | |
| E.H. et al., | The County of Riverside |
| Defendants and Appellants. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

_____

THE COURT

The petition for rehearing is denied. The opinion filed on February 22, 2022 and modified on March 1, 2022, is modified as follows:

On page 13, first paragraph, eliminate the sentence starting with "In other words," as well as the citation that follows.

On page 16, last paragraph, delete the second and third sentences and replace with the following sentence: "First, the People did not prove that the predicate offenses commonly benefitted Barrio Dream Homes."

Except for the modification, which doesn't affect the judgment, the opinion is unchanged.

CERTIFIED FOR PUBLICATION

SLOUGH _____
                                         J.

We concur:

McKINSTER _____
            Acting P. J.

1

<u>MENETREZ</u>

J.

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E072463 |
| Plaintiff and Respondent, | (Super.Ct.Nos. INF1500253 & INF1500502) |
| v. | |
| E.H. et al., | |
| | The County of Riverside |
| Defendants and Appellants. | |
| | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

_____

THE COURT

      We GRANT the request to modify our opinion and ORDER that the opinion filed on February 22, 2022, including its caption, be modified by removing any reference to the full or partial names of the appellants and defendants, and replacing those references with their initials, E.H. and A.T. where appropriate.

      On page 5, the last sentence before subsection "C," should be revised to read: "The prosecution played this recording for the jury, and E.H.'s first name can be heard a number of times."

      Except for the modification, which doesn't affect the judgment, the opinion is unchanged.

      CERTIFIED FOR PUBLICATION

SLOUGH _____
J.

We concur:

McKINSTER _____
Acting P. J.

MENETREZ
                    J.


cc:     See attached list

4

MAILING LIST FOR CASE: E072463
The People v. E.H. et al.


Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502


Kathryn A. Kirschbaum
Office of the Attorney General
P.O. Box 85266
San Diego, CA 92186-5266


Daniel J. Kessler
Kessler & Seecof, LLP
3990 Old Town Avenue, Suite B-109
San Diego, CA 92110


Lynda A. Romero
7421 Burnett Road, No. 445
Austin, TX 78757


Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101 2396

Filed 2/22/22; Opinion on rehearing (unmodified opinion except for privacy redactions per 3/1/22 mod order)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>E.H.,<br><br>      Defendant and Appellant. | E072463<br><br>(Super.Ct.Nos. INF1500253 &<br>INF1500502)<br><br>OPINION ON REHEARING |

APPEAL from the Superior Court of Riverside County. Russell L. Moore, Judge. Affirmed in part; reversed in part with directions.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant E.H.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted E.H. of six counts of robbery committed for the benefit of a criminal street gang and one count of active gang participation (all committed when he was 15 years old), and he received a sentence of 65 years to life in state prison. E.H. appealed his judgment of conviction, and, while his appeal was pending, Proposition 57 raised the minimum age a minor can be tried as an adult in criminal court from 14 to 16. (Sen. Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1).) Following the procedure approved in *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*), the trial judge recalled E.H.'s sentence and transferred his case to juvenile court, where the judge "treat[ed the] convictions as juvenile adjudications" and held a hearing to impose an appropriate disposition. (*Id.* at p. 310; see also Welf. & Inst. Code, §§ 602, 702, 706.) After E.H. was transferred to the Department of Juvenile Justice, he informed us he wished to proceed with his appeal, which we have reinstated as an appeal from a judgment in a juvenile criminal proceeding. (Welf. & Inst. Code, §800.)

E.H. raises two challenges to the criminal trial on which his juvenile adjudications are based. First, he argues the trial judge violated his due process rights by instructing the jury with CALCRIM No. 315, which covers eyewitness identification evidence and tells the jury to consider, among other factors, the witness's level of certainty when making the identification. We reject this argument under *People v. Lemcke* (2021) 11 Cal.5th 644, in which our Supreme Court recently held that CALCRIM No. 315's certainty factor does not violate due process.

We agree, however, with E.H.'s second argument, which is that recently enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) requires reversal of the true findings on the substantive gang offense and enhancements because the new law increased the proof requirements under the gang statute (Pen. Code, § 186.22). We therefore remand to the juvenile court to (1) give the People an opportunity to retry the substantive charge and enhancement allegations under Assembly Bill 333's new requirements in a juvenile criminal proceeding and (2) impose a new disposition in E.H.'s case—either at the conclusion of retrial or upon the People's election not to retry him. We otherwise affirm the judgment.

## I

## FACTS

### A. *Robbery of Ismael*

Around midnight on February 7, 2015, Ismael D. was outside his home when he noticed a black Chevy Silverado driving by at an unusually slow pace. Ismael asked the driver if he could help him and, after a brief exchange, the driver got out of the truck, showed Ismael his gun, and asked him if he knew anyone from a local gang called "Cathedral City." When Ishmael said no, E.H. and his 14-year-old codefendant, A.T., stepped out of the truck.[1] A.T. demanded Ismael empty his pockets, and E.H. hit him in the face with a rifle. More people got out of the truck then, all armed with weapons.

---

[1] A.T. is not a party to this appeal. Though he initially filed an appeal raising the same argument about CALCRIM No. 315 as E.H., he abandoned his challenge after our Supreme Court issued their decision in *People v. Lemcke*, *supra*, 11 Cal.5th 644, which we discuss in part II.A, below.

Ismael emptied his pockets and handed over his belongings, and the group began to beat him. When his wife noticed what was happening, she yelled through the window that she was calling the police. The group got back into the truck and fled.

B.      *Home Invasion Robbery of Multiple Victims*

Shortly after robbing Ismael, the group went to the home of Duane S. They barged into the bedroom where Duane was hanging out with his brother and his girlfriend, and demanded everyone empty their pockets. One of the group members said he was from Barrio Dream Homes—another Cathedral City gang—and was there to collect on a drug debt. The group took $40 and a computer tablet Duane and his brother had been using moments before to record a rap song. Before leaving the room, E.H. struck Duane in the face with a rifle.

The group proceeded down the hall to another room in the house where Duane's girlfriend's son and two of his friends were playing video games. They kicked down the locked door, and E.H. and A.T. drew their guns. The group took several items, including a cell phone and a gaming system, and one of the intruders struck one of the victims in the face with a gun. Some of them yelled "Dream Homes" as they fled the scene. The victims saw the intruders drive away in a black Chevy Silverado and immediately called the police.

Officers near the area spotted a truck matching that description. The driver refused to pull over, initiating a relatively brief pursuit that ended when he crashed into a curb. After the crash, everyone in the truck scattered in an attempt to hide. The officers found

E.H. crouched in a nearby bush, carrying a cell phone that belonged to one of the victims. Inside the truck, police found the guns used in the robberies and recovered the rest of the stolen property, including the tablet Duane had been rapping into. As it turned out, the tablet continued to record after the robbery, and it picked up the group's discussion of the crimes they'd just committed. The prosecution played this recording for the jury, and E.H.'s first name can be heard a number of times.

C.     *Eyewitness Identifications*

The same night as the robberies, three of the victims identified E.H. as one of the perpetrators from a photographic lineup. These three victims also identified E.H. in court during their trial testimony. Two other victims gave a qualified identification of E.H. from a photographic lineup. One said E.H. "might have been" one of the robbers. The other said E.H. "looked familiar"; however, during trial he identified E.H. as one of the perpetrators.

Without an objection or request for modification from E.H., the trial judge instructed the jury with CALCRIM No. 315, the standard Judicial Council instruction regarding eyewitness identification. That instruction directs the jury to consider up to 15 factors in evaluating eyewitness identification testimony, one of which is the witness's level of certainty. It says in relevant part: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification

5

testimony, consider the following questions: [¶] ... [¶] How certain was the witness when he or she made an identification?"[2] (CALCRIM No. 315.)

D.     *Gang Evidence*

Cathedral City Police Officer Alfredo Luna said Barrio Dream Homes is a local gang that started in the 1950's or 1960's. As of February 2015, the gang had about 30 or 40 active members and claimed territory in the western part of Cathedral City, near the border of Palm Springs. The gang's primary activities included burglary, robbery, carjacking, and shooting.

Members of Barrio Dream Homes had been convicted of various predicate offenses. A member named Diego Loya was convicted of robbery in 2013. A member named Anthony Vivanco was convicted of grand theft from a person, with a gang enhancement, in 2013. A member named Samuel Reyes was convicted of grand theft from a person, with a gang enhancement, in 2013. A member named Fredrico Garza was convicted of attempted murder in 2013. E.H. suffered a juvenile adjudication for assault

---

[2] The other 14 factors are: "Did the witness know or have contact with the defendant before the event?"; "How well could the witness see the perpetrator?"; "What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, [and] duration of observation?"; "How closely was the witness paying attention?"; "Was the witness under stress when he or she made the observation?"; "Did the witness give a description and how does that description compare to the defendant?"; "How much time passed between the event and the time when the witness identified the defendant?"; "Was the witness asked to pick the perpetrator out of a group?"; "Did the witness ever fail to identify the defendant?"; "Did the witness ever change his or her mind about the identification?"; "Are the witness and the defendant of different races?"; "Was the witness able to identify other participants in the crime?"; "Was the witness able to identify the defendant in a photographic or physical lineup?"; and "Were there any other circumstances affecting the witness's ability to make an accurate identification?" (CALCRIM No. 315.)

with a deadly weapon in 2013. And in 2014, A.T. suffered a juvenile adjudication for burglary.

Officer Luna believed E.H. and A.T. were active members of Barrio Dream Homes at the time of the alleged robberies. He explained that when members of the gang commit violent crimes, like robbery, they benefit the gang by bolstering its reputation within the community for violence. He also said that crimes like burglary, robbery, and drug sales can provide a monetary benefit to the gang by bringing in money that can be used to purchase firearms "or [other] things that the gang may need."

E.   *Verdict*

The jury convicted E.H. of six counts of robbery and one count of active participation in a criminal street gang. (Pen. Code, §§ 211, 186.22, subd. (a); unlabeled statutory citations refer to this code.) As to the robbery counts, the jury also found true that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd., (b)), that E.H. personally used a firearm (§ 12022.53, subd. (b)), and that a principal personally used a firearm (§ 12022.53, subd. (e)). As noted, the trial judge sentenced E.H. to state prison but later vacated his sentence under Proposition 57 and transferred his case to juvenile court for disposition. (See *Lara*, *supra*, 4 Cal.5th at p. 310; Welf. & Inst. Code, §§ 602, 702, 706.)

E.H. filed a timely notice of appeal.

## II

## ANALYSIS

A.      *CALCRIM No. 315*

E.H. argues the trial judge erred by failing to remove witness certainty from CALCRIM No. 315's list of factors for the jury to consider when evaluating eyewitness identifications. Citing to case law noting that scientific studies have found a weak correlation between witness certainty and accuracy, he argues the error violated his constitutional due process rights. (E.g., *People v. Sanchez* (2016) 63 Cal.4th 411, 462 (*Sanchez*).)

The People argue we should follow the California Supreme Court's holding in *Sanchez* and find E.H.'s argument forfeited because he did not object to the instruction or ask the trial judge to remove the certainty factor. (*Sanchez*, *supra*, 63 Cal.4th at p. 461 ["If defendant had wanted the court to modify the [eyewitness identification] instruction, he should have requested it. The trial court has no sua sponte duty to do so"].) The People argue that forfeiture is especially appropriate where, as here, inclusion of the certainty factor might have been beneficial to the defendant because the evidence "involved many identifications, . . . some [of which were] uncertain," and "[d]efendant would surely want the jury to consider how *uncertain* some of the identifications were." (*Id.* at p. 462.) E.H. says his claim is not forfeited because the certainty factor violated his rights to due process and therefore affected his "substantial rights" within the meaning of section 1259. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 927 ["Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights"].)

8

The People's argument is well taken. Our Supreme Court has held that this is precisely the type of challenge that can be forfeited if not raised during trial, and while none of the witnesses who identified E.H. were asked whether they were certain about the identification or volunteered that they were, two of them expressed a degree of uncertainty. But more fundamentally, E.H.'s argument for avoiding forfeiture fails for the same reason his challenge fails on the merits—his substantial rights weren't affected because the instruction doesn't violate due process. While this appeal was pending, our Supreme Court decided *People v. Lemcke*, *supra*, 11 Cal.5th 644 (*Lemcke*), in which it concluded CALCRIM No. 315's certainty factor does not violate due process even though empirical research shows that confidence in a witness identification is generally not a reliable indicator of accuracy. (*Id.* at p. 644.) The court based its decision on a number of considerations, including that the factor does not equate certainty with accuracy and that it is just one of several other factors for evaluating the credibility of a witness identification. (*Id.* at p. 657.) "[W]e find nothing in CALCRIM No. 315's instruction on witness certainty that operates to 'lower the prosecution's burden of proof.' . . . [T]he instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a

credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in CALCRIM No. 315. Indeed, even [the defendant] acknowledges that, on its face, the instruction is 'superficially neutral.'"[3] (*Ibid.*)

The court also noted that Lemcke had the opportunity to (and did) present expert evidence on the reliability of eyewitness identification, and it also noted that the jury received other instructions tending to mitigate any correlation CALCRIM No. 315 might suggest between certainty and accuracy. Specifically, the trial court had instructed the jury that "'[p]eople sometimes honestly . . . make mistakes about what they remember,'" and that they were responsible for "'judg[ing] the credibility or believability of the witnesses.'" (*Lemcke*, *supra*, 11 Cal.5th at p. 658.) Additionally, CALCRIM No. 315 itself emphasizes that "[t]he People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime" and if they "have not met this burden, you must find the defendant not guilty." (*Lemcke*, at p. 658.) Based on all of these considerations, the court concluded that "listing the witness's level of certainty as one of [several] factors the jury should consider when evaluating an eyewitness identification did not render [Lemcke's] trial fundamentally unfair or otherwise amount to a due process violation." (*Id.* at p. 661.)

---

[3] Despite finding no due process violation, the court acknowledged the instruction's potential to mislead jurors about the relationship between certainty and accuracy and therefore used its supervisory powers to direct "trial courts to omit the certainty factor from CALCRIM No. 315 until the Judicial Council has the opportunity to consider how the language might be better worded to minimize juror confusion on this point." (*Lemcke*, *supra*, 11 Cal.5th at p. 669.)

*Lemcke*'s holding applies squarely to this case. During E.H.'s trial, the judge gave the jury the same additional instructions on witness testimony and the prosecution's burden of proof that were given in *Lemcke*, and there was nothing to stop E.H. from presenting expert evidence on eyewitness identification. We therefore reject his claim of instructional error.

But even if it had been error to give the certainty factor, we see no prejudice resulting from the instruction. First of all, as noted above, none of the witnesses said they were certain about their identifications but two did express a degree of certainty when selecting E.H. from the photographic lineup. One said E.H. "might have" been one of the robbers and the other said E.H. "looked familiar." Thus, when it came to those two witnesses, telling the jury to consider how certain the witnesses were when they made their identifications could only benefit E.H.. Second, and more importantly, the identifications were not the only—or even strongest—evidence connecting E.H. to the robberies. E.H.'s name was mentioned multiple times in the recording recovered from the tablet, and the police caught him trying to run from the truck used in the robberies while carrying one of the stolen items. Given the compelling evidence of guilt independent of the identifications, we conclude "[i]t is not reasonably probable [E.H.] would have obtained a more favorable result had the trial court deleted the certainty factor." (*Sanchez*, *supra*, 63 Cal.4th at p. 463.)

B.      *Assembly Bill 333*

1.      *Amendments to section 186.22*

Section 186.22 makes it a crime to actively participate in a "criminal street gang," and the statute provides for enhanced punishment when a defendant is convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with any criminal street gang." (Former § 186.22, subds. (a), (b)(1).) As noted above, E.H.'s judgment included a conviction and six enhancements under this provision, one accompanying each robbery conviction.

Shortly before we issued our opinion in this appeal, the Legislature enacted Assembly Bill 333, which amended section 186.22 to impose new substantive and procedural requirements for gang allegations and the substantive offense of gang participation. Because the new law would go into effect before E.H.'s judgment of conviction became final, we granted his petition for rehearing and ordered supplemental briefing on the effect of Assembly Bill 333 on this case.

The new law made three significant modifications to section 186.22—it amended the definitions of "criminal street gang" and "pattern of criminal gang activity" and clarified the evidence needed to establish an offense benefits, promotes, furthers or assists a criminal street gang. Previously, the statute defined a "criminal street gang," as "any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f), italics added.) Assembly Bill 333 narrowed the definition to "an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang

12

activity." (Assem. Bill 333, § 3, revised § 186.22, subd. (f), italics added.) In other words, because the Legislature replaced "individually or collectively engage in . . . a pattern of criminal gang activity" with simply "collectively engage," the statute now requires the People "to prove that two or more gang members committed each predicate offense." (*People v. Delgado* (Feb. 10, 2022, B299482) __ Cal.App.5th __ [2022 Cal.App. Lexis 104, *3]; accord, *People v. Lopez* (2021) 73 Cal.App.5th 327, 344-345.)

As for what constitutes a "pattern of criminal gang activity," previously the prosecution needed to prove "only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another."[4] (*People v. Sek* (Feb. 1, 2022, B309003) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 82] (*Sek*), citing former § 186.22, subd. (e).) Assembly Bill 333 made several changes to this definition. First, the predicate offenses now must have been committed by two or more "members" of the gang (as opposed to any persons). (§ 186.22, subd. (e)(1).) Second, the predicate offenses must be proven to have "*commonly* benefited a criminal street gang." (*Ibid.*, italics added.) Third, the last predicate offense must have occurred within three years of the date of the currently charged offense. (*Ibid.*) Fourth, the list of qualifying predicate offenses has been reduced.

---

[4] Specifically, the statute defined a "pattern of criminal gang activity" to require proof of two or more predicate offenses enumerated in that subdivision, "provided at least one . . . occurred after the effective date of this chapter and the last . . . occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more *persons*." (Former § 186.22, subd (e)(1), italics added.)

13

(*Ibid.*) And fifth, the currently charged offense no longer counts as a predicate offense. (§ 186.22, subd. (e)(2).)

Finally, and perhaps most notably, Assembly Bill 333 requires the prosecution to prove the benefit the gang derives from the predicate and current offenses is "more than reputational." (Stats. 2021, ch. 699, § 3 [enacting § 186.22, subd. (g)].) New section 186.22, subdivision (g), provides, "As used in this chapter, to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

In addition to these substantive changes, Assembly Bill 333 added section 1109, which establishes a new procedure for trying substantive offenses and enhancements under section 186.22. Section 1109, subdivision (a) requires the court to bifurcate the trial of any gang enhancements, upon the defendant's request. Section 1109, subdivision (b) requires trial courts to try the substantive offense of gang participation "separately from all other counts that do not otherwise require gang evidence as an element of the crime," whether or not requested by the defense.

14

2. *Application*

The parties agree, and so do we, that Assembly Bill 333's substantive changes apply retroactively to all cases—like E.H.'s—in which the judgment of conviction is not yet final because the changes "redefine, to the benefit of defendants, conduct subject to criminal sanctions." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 300-301; see also *In re Estrada* (1965) 63 Cal.2d 744 [when a change in law reduces the punishment for a crime, defendants with nonfinal judgments are entitled to those "ameliorating benefits"]; *People v. Lopez*, *supra*, 73 Cal.App.5th at p. 344 [concluding substantive changes in Assembly Bill 333 apply retroactively because they "increase[] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement"].)

The parties disagree, however, about the effect of these changes in this case. E.H. argues reversal is required because the People did not ask the jury to find at least some of the elements that Assembly Bill 333 requires, and that the prior law did not require. The People argue that instructing the jury on the former version of section 186.22 constitutes harmless error because the record contains substantial evidence to support the gang conviction and enhancements even under the new law's stricter requirements. We agree with E.H.

Because Assembly Bill 333 essentially adds new elements to the substantive offense and enhancements in section 186.22—for example, by requiring proof that gang members "collectively engage" in a pattern of criminal gang activity, that the predicate offenses were committed by gang members, that the predicate offenses benefitted the

15

gang, and that the predicate and underlying offenses provided more than a reputational benefit to the gang—we agree with our colleagues in the Second District that the prejudice standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) applies. (*Sek*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 82 at p. *10]; *People v. Delgado*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 104 at p. *37].) Under that standard, the absence of instruction on the amended version of section 186.22 requires reversal unless "it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict." (*People v. Flood* (1998) 18 Cal.4th 470, 504.)

On this record, we cannot conclude the jury instructions were harmless beyond a reasonable doubt. First, the evidence of predicate offenses the prosecution presented to establish Barrio Dream Homes's pattern of criminal gang activity, while sufficient at the time of trial, is insufficient under the new law. As best we can tell from the trial record, all six of the predicate offenses submitted to the jury were committed by a single gang member acting individually, rather than collectively, with at least one other gang member. Second, the jurors were permitted to consider the current offenses in determining whether the prosecution had proven a pattern of criminal gang activity, and they were not required to find the predicate offenses benefitted the gang. And third, the prosecution's evidence and argument focused on reputational benefit to the gang, which is also no longer permitted under amended section 186.22.

The People argue that because Officer Luna also testified about *financial* benefits to the gang that were not merely reputational, their gang evidence was sufficient even under the new law. But "to prove harmless error under the *Chapman* standard, it is not enough to show that substantial or strong evidence existed to support a conviction under the correct instructions." (*Sek*, *supra*, __ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 82 at p. *11].) The inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.) This standard is much higher than substantial evidence review. For example, courts have found harmless error under the *Chapman* standard where the missing element from an instruction was uncontested or proved as a matter of law. (See *People v. Merritt* (2017) 2 Cal.5th 819, 832 ["'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless'"]; *People v. Vinson* (2011) 193 Cal.App.4th 1190, 1200.) Here, as in *Sek*, "the basis of the jury's verdict is not so clear." (*Sek*, at p. *13.) Because the prosecution presented evidence of both financial and reputational benefit, "we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true." (*Ibid.*)

The proper remedy for this type of failure of proof —where newly required elements were "never tried" to the jury—is to remand and give the People an opportunity

to retry the affected charges. (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72, fn. 2; see also *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand. [Citation.] Such a retrial is not barred by the double jeopardy clause or ex post facto principles"].)

Finally, we reject E.H.'s argument that we must also reverse his robbery convictions because those charges were not tried separately from his gang charges, as required by new section 1109. Even if section 1109 applied retroactively to his case—an issue we need not and do not decide here—E.H. cannot show it is "reasonably probable" he would have obtained a more favorable result if his trial had been bifurcated. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) This is because when the evidence of guilt on the relevant charges is "overwhelming," as it was here, it is unlikely the defendant was harmed by the format of the trial. (*People v. Pinholster* (1992) 1 Cal.4th 865, 931 [concluding the failure to bifurcate was harmless under the *Watson* standard because "[t]here was overwhelming evidence of defendant's guilt on the other charges"].) The People presented strong evidence that E.H. committed the charged robberies. Police caught him hiding with contraband shortly after the second robbery, four victims identified him as one of the perpetrators, and his name comes up at multiple points on the recording from the stolen tablet. Under these circumstances, we conclude that the jury's verdict was based on the evidence, not improper bias, and that bifurcation would not have helped E.H.

## III

## DISPOSITION

We reverse the true findings on the offense of active gang participation (§ 186.22, subd. (a)) and the gang enhancement allegations on each robbery count (§ 186.22, subd. (b)) and remand to the juvenile court with directions to (1) give the People an opportunity to retry the offense and enhancements under the law as amended by Assembly Bill 333; and (2) if the People elect not to retry E.H., or at the conclusion of retrial, to impose an appropriate disposition. In all other respects, we affirm the judgment.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:


McKINSTER
Acting P. J.


MENETREZ
J.

19