Filed 3/1/23  P. v. Mejia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C093678 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF14-0000002-04) |
| v. | |
| JESUS ALEXANDER MEJIA, | |
| Defendant and Appellant. | |

We previously remanded defendant Jesus Alexander Mejia's case for resentencing after a jury found him guilty of five counts of attempted murder, five counts of assault with a deadly weapon, one count of shooting at an occupied vehicle, and one count of being an active participant in a criminal street gang (gang participation offense); and found true multiple gun and gang enhancements.  (*People v. Mejia* (July 30, 2019, C081313) [nonpub. opn.] (*Mejia*).)  Defendant now appeals following the resentencing hearing contending that numerous newly enacted laws pertaining to the crimes he was convicted of and the sentence he received retroactively apply to him and that his case

1

must be retried and/or he must be resentenced in light of those new laws. He also argues the court committed instructional error at his trial.

We agree defendant's attempted murder convictions must be reversed because of the amendments to former Penal Code[1] section 1170.95 (current section 1172.6)[2] enacted by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 10). We disagree that reversal of the gang participation offense and gang enhancements is required because of the amendment to section 186.22 and enactment of section 1109 by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 4-5). Given these conclusions, we do not address defendant's sentencing claims or instructional error claim related to the kill zone theory. Accordingly, we reverse defendant's convictions for attempted murder. We remand the matter to the trial court for further proceedings, at the end of which the trial court shall conduct a full resentencing hearing applying newly enacted sentencing legislation. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

FACTUAL AND PROCEDURAL BACKGROUND

The jury found defendant guilty of five counts of attempted murder, five counts of assault with a deadly weapon, one count of shooting at an occupied vehicle, and one count of gang participation. The jury also found that the attempted murders were *not* willful, deliberate, and premeditated; that defendant committed all the offenses, other than the gang participation offense, to benefit a criminal street gang; that defendant willfully and unlawfully carried a firearm during the commission of a street gang crime in connection with the attempted murders and assaults; that a principal committed the

---

[1] Further undesignated section references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. Although defendant filed his petition under former section 1170.95, we cite the current section 1172.6 throughout the remainder of this opinion.

attempted murders while discharging a gun for the benefit of a criminal street gang; that defendant did *not* personally use a firearm; and that defendant did *not* personally inflict great bodily injury. (*Mejia*, *supra*, C081313.)

Defendant's convictions resulted from a drive-by shooting he committed with Martin Gonzales, Javier Hernandez, and Christopher Hammonds against the principal victim, Jonathan D., a Sureño gang member. (*Mejia*, *supra*, C081313.) On December 31, 2013, Jonathan drove to a market with his girlfriend and three children. Jonathan's mother followed him in her own car with her boyfriend and grandson. When Jonathan parked his car, his mother saw a car that followed them to the market drive behind Jonathan's car. When Jonathan got out of his car, he heard a gunshot. He ducked behind his car door and heard more gunshots—four to five gunshots in total. Jonathan had a gunshot wound to his wrist, a window of his car was shattered, and there were bullet holes in his car. (*Ibid.*) There were conflicting accounts of the shooter's identity, but given the jury's findings, it was not defendant. (*Ibid.*)

Defendant and his coparticipants were all members of the Varrio Linda Rifa subset of the Norteño gang. (*Mejia*, *supra*, C081313.) Defendant admitted he had altercations with Jonathan multiple times before December 31, 2013, because he was a Norteño subset member while Jonathan was a Sureño gang member. He said people who associated with Jonathan jumped defendant in late November or early December. (*Ibid.*) Rap lyrics found in defendant's jail cell tended to incriminate him in a shooting. (*Ibid.*)

Yuba County Sheriff's Deputy Brandon Charter and Yuba County Sheriff's Detective Benjamin Martin testified as the prosecution's gang experts. They explained that the Norteño gang and the Sureño gang are rival gangs and that Varrio Linda Rifa is a subset of the Norteño gang. Detective Martin described the symbols, hand signs, and colors associated with Varrio Linda Rifa and other Norteño allied gangs. The experts testified that they believed defendant was an active participant in the Norteño gang, as were his coparticipants. Detective Martin's opinion was based on defendant's association

3

with admitted gang members and prior validations. At the time he was booked in jail, defendant identified himself as a Norteño. He had Norteño-related tattoos on his chest and wrist. He associated with and committed crimes with Norteños. Detective Martin testified to his opinion that the market shooting was committed in association with Norteño gang members and benefited the Norteño gang. (*Mejia*, *supra*, C081313.)

As for the predicate offenses, Detective Martin testified that multiple Norteño subsets existed in Yuba County and they all worked together to commit crimes, such as attempted murder, shooting from or at an occupied vehicle, possession of firearms, assault with a deadly weapon, intimidation, and robbery. Detective Martin testified about several specific offenses, including an attempted murder committed by Norteño gang members in which they shot from a car at Sureño gang members they had just encountered in a minimart. Enedina Soto, her brother Jonathan Bueno, Jesus Villareal, and Alfonso Hernandez were involved in the offense. A complaint charging all of these participants was admitted into evidence and provided that the crime occurred on April 20, 2013. Bueno pled no contest to a single count in an amended complaint, in which he was the only named defendant.

Detective Martin also detailed another attempted murder occurring after an assault by a group of Norteño gang members against a victim they believed was a rival gang member based on the clothes the victim was wearing. After the assault was broken up by bystanders, the group of Norteño gang members followed the victim's car in their own car and shot at the victim's car multiple times.

Detective Martin also testified about multiple assault with deadly weapon offenses involving Norteño gang members. He pointed to a "stabbing incident in the jail" involving Norteño gang members attacking a nongang member who disrespected them, a stabbing by a Norteño gang member against "a Sureño gang member in the Park Circle area," and a gang fight involving Norteño gang members in which brass knuckles were used against a rival gang member. The Norteño gang members involved in the fight with

4

brass knuckles were James Chagolla, Juan Garcia, and Alex Garcia. A complaint pertaining to an incident involving Chagolla and brass knuckles was admitted into evidence and demonstrated the crime occurred on March 11, 2013. As a result of that complaint, Chagolla pled no contest to assault by means of force likely to cause great bodily injury and a gang participation offense. Chagolla had also visited defendant in jail more than once, and when serving time together in jail on November 9, 2014, Chagolla, defendant, and another Norteño gang member were involved in a fight against another person about internal gang politics.

Detective Martin also pointed to a robbery spree where a group of Norteño gang members stole a bike from a minor, assaulted the minor's father, and assaulted/robbed a man they encountered while fleeing. Finally, Detective Martin testified about David Robinson, a validated Norteño and Crip gang member, who was encountered while possessing a concealed, loaded firearm. Detective Martin testified that he considered Robinson to be a member of a hybrid gang called the Northern Crips, which consists of members from multiple gangs.

To Detective Martin, attacks on rival gang members benefit the Norteño gang because the attacks strike fear in the rival gang and give the Norteño gang a perceived higher status than the rival gang. Attacks on rival gang members also demonstrate to the community the aggressor gang is to be feared and respected.

Following the jury's verdicts, the trial court sentenced defendant to an aggregate determinate term of 45 years plus an indeterminate term of 25 years to life. Among other things, the trial court imposed a sentence of 25 years to life for the gun enhancement attached to one of the attempted murders and six-year eight-month sentences for the gun/gang enhancements attached to the other attempted murders. (*Mejia*, *supra*, C081313.)

As a result of defendant's first appeal, we remanded the matter so the trial court could exercise its discretion whether to strike defendant's gun enhancements under

legislation enacted after defendant's conviction. (*Mejia*, *supra*, C081313.) On remand the trial court decided to strike defendant's gun enhancements to bring his sentence closer in duration to his coparticipants' sentences. Ultimately, the trial court sentenced defendant to 23 years four months in prison. The trial court also considered defendant's petition for resentencing filed pursuant to section 1172.6. The trial court found defendant ineligible for resentencing under that section because the plain meaning of the statute did not provide relief to those convicted of attempted murder.

Defendant appeals following remand.

DISCUSSION

I

*Defendant Is Entitled To Reversal Of His Attempted Murder Convictions*

Defendant contends he is entitled to reversal of his attempted murder convictions because the convictions were based on his aiding and abetting of a target felony, the natural and probable consequences of which resulted in attempted murders. Defendant argues this was a viable theory of attempted murder at the time of his trial but has since become nonviable due to Senate Bill Nos. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) and 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551). The People argue defendant's claim is not cognizable on direct review because his convictions are final and that, instead of addressing the issue on direct review, defendant must seek relief in a resentencing petition pursuant to section 1172.6. We agree with defendant.

Importantly, defendant's case is not final but still in the midst of the direct review process. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed, or such a petition, if filed, has been decided].) As such, section 1172.6, subdivision (g) applies to defendant's case. That provision provides: "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made

6

to Sections 188 and 189 by Senate Bill [No.] 1437 (Chapter 1015 of the Statutes of 2018)." (See *People v. Hola* (2022) 77 Cal.App.5th 362, 370.)

Because the jury instructions regarding attempted murder at defendant's trial included an instruction on the natural and probable consequences doctrine, "we will treat the instruction[s] as having been 'legally erroneous at the time [they were] given' ([*People v.*] *Gentile*[ (2020)] 10 Cal.5th [830,] 851), and we will proceed to 'assess whether the error was harmless beyond a reasonable doubt' under *Chapman* [*v. California* (1967) 386 U.S. 18]." (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 868, fn. omitted.)

Here, the error was not harmless. The jury found that defendant did not act with premeditation or deliberation and was not the actual shooter or the person who inflicted great bodily injury. The jury was instructed on direct aider and abettor liability for express malice attempted murder and the felony-murder rule predicated on defendant's participation in an assault with a deadly weapon, the natural and probable consequences of which were that a death would result. During closing arguments, the prosecution argued that defendant was guilty of attempted murder because the natural and probable consequences of his conduct were that people could die. The prosecution did not argue that defendant held the express intent to kill.

From the jury's verdicts, the court's instructions, and the prosecution's argument, we cannot say beyond a reasonable doubt that the jury convicted defendant of attempted murder under an express malice theory or a still viable implied malice theory. Instead, it appears the jury could have convicted defendant of attempted murder under a felony-murder theory of liability. At the time of defendant's trial, attempted murder under a felony-murder theory was a valid theory of liability; not so after Senate Bill No. 775.

Accordingly, defendant's convictions for attempted murder must be reversed. The prosecution is afforded an opportunity to retry defendant on a still valid theory of attempted murder. Because we reverse defendant's attempted murder convictions, we do

not address defendant's argument the trial court erred by instructing the jury with a kill zone instruction that predated our Supreme Court's clarification of the theory in *People v. Canizales* (2019) 7 Cal.5th 591. We further do not address defendant's arguments related to recently enacted sentencing legislation because the trial court will necessarily resentence defendant upon remand applying all applicable sentencing legislation then in effect. (See *People v. Buycks*, *supra*, 5 Cal.5th at p. 893.)

II

*Retrial Is Not Required In Light Of Newly Enacted Gang Legislation*

Defendant argues his gang enhancements must be vacated and his gang participation offense reversed because of recent amendments enacted by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 4-5). We disagree.

A

*Applicable Law*

Section 186.22 provides for enhanced punishment when the defendant is convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The section also provides for a gang participation offense when the defendant "actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang . . . ." (§ 186.22, subd. (a).)

Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 4) amended section 186.22 in several fundamental ways. As relevant here, Assembly Bill No. 333 "redefines 'pattern of criminal gang activity' to require that the last of the predicate offenses 'occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed,' and that the predicate offenses 'were committed on separate occasions or by two or more members, the offenses

commonly benefited a criminal street gang, and the common benefit of the offenses is more than reputational.' " (*People v. Lopez* (2021) 73 Cal.App.5th 327, 345.)  In addition, the currently charged offense cannot be used as a predicate offense under the amendments made by Assembly Bill No. 333.  (*Ibid.*)

Further, subdivision (g) of section 186.22 now defines the term "to benefit, promote, further, or assist" a criminal street gang to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational," which may include "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." Previously, proof of a reputational benefit to the gang would have sufficed.  (*People v. Ramirez* (2016) 244 Cal.App.4th 800, 819.)

Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 5) also added section 1109, which allows for a defendant charged with a gang enhancement under section 186.22, subdivision (b) or (d) to request the enhancement be tried in a separate phase of the trial.  (§ 1109, subd. (a).)  If a defendant is charged with a gang participation offense (§ 186.22, subd. (a)), then the charge "shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. This charge may be tried in the same proceeding with an allegation of an enhancement under subdivision (b) or (d) of Section 186.22."  (§ 1109, subd. (b).)

B

*Sufficient Evidence Supports The Jury's Gang Findings*

Defendant contends the evidence was insufficient under the current gang statute to prove that he was guilty of the gang participation offense and that he committed his other offenses for the benefit of a criminal street gang.  Specifically, defendant points to the prosecution's showing regarding the predicate offenses and argues the showing was inadequate because the prosecution did not prove at least two members of defendant's gang committed each of the predicate offenses.  Relatedly, defendant argues the jury was

9

erroneously instructed on the elements related to the predicate offenses, resulting in prejudicial error. We disagree on all scores.

The parties agree the changes to section 186.22 apply retroactively to defendant but disagree as to whether the evidence is sufficient under current law to sustain the jury's verdict and true findings. "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "The standard of review is the same where the prosecution relies primarily on circumstantial evidence." (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 610.) " 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the evidence even if the court would have concluded otherwise.' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.) Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) The sufficiency of the evidence to support an enhancement is reviewed using the same standard applied to a conviction. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)

Defendant limits his insufficiency argument to the evidence supporting the predicate offenses. He argues the evidence did not demonstrate that each predicate offense was committed by two or more gang members. We note it is an open question whether the current gang statute requires an alleged gang's predicate offenses to have been committed by at least two gang members, or whether those offenses could be found based on individual acts committed on separate occasions. (Compare *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1088-1089 ["amended [§ 186.22,] subdivision (f)'s requirement that gang members 'collectively engage' in a pattern of criminal gang

10

activity means the [prosecution was] required to prove that two or more gang members committed each predicate offense in concert"] with *People v. Clark* (2022) 81 Cal.App.5th 133, 145-146 [pattern of "gang activity may be established by (1) two gang members who separately committed crimes on different occasions, or (2) two gang members who committed a crime together on a single occasion"], review granted Oct. 19, 2022, S275746.) We need not decide which interpretation is more persuasive because sufficient evidence demonstrates that each predicate offense was committed by at least two members of defendant's gang.

Defendant points to the convictions involving Chagolla and Bueno as the convictions underpinning the predicate offenses because those were the only offenses the evidence demonstrates were committed within the timeframe required by section 186.22, subdivision (e)(1). Defendant argues the conviction involving Chagolla's use of brass knuckles is insufficient because nothing outside the certified records of Chagolla's conviction demonstrated he committed the offense with another gang member. He argues Detective Martin's testimony providing for the presence of two fellow gang members during the assault does not fill the gaps because Detective Martin did not link his testimony to Chagolla's record of conviction or provide a date of the assault he knew of involving Chagolla and two gang members. Defendant's argument goes to the weight of the evidence and not its sufficiency. It is a reasonable inference that the assault involving brass knuckles testified to by Detective Martin was the same 2013 assault involving brass knuckles referred to in Chagolla's record of conviction. We can readily infer Detective Martin knew of Chagolla's conduct because the conduct attracted police attention, which then turned into prosecution, as is often the case once police scrutiny is applied to felonious conduct. To the extent defendant argues now that Chagolla's conviction involves a different occasion than the incident testified to by Detective Martin, it was incumbent upon him to cross-examine Detective Martin on that point and undercut the reasonable inference established by the evidence.

11

Similarly, we can reasonably infer that the offense to which Bueno pled no contest resulted from the shooting he committed with his sister and two other Norteño gang members. The offenses for that incident were charged in the same complaint that was ultimately amended to facilitate Bueno's no contest plea. Defendant argues that because Bueno pled to an amended complaint that provided for a single charge against him individually, we may not infer that charge was committed with other gang members. We disagree. The current, as well as the former, gang statute requires only that the jury find defendant is a member of a gang that committed two predicate offenses. (*People v. Garcia* (2014) 224 Cal.App.4th 519, 524-525.) Thus, to the extent defendant focuses only on Bueno's conviction, that focus is erroneous because the prosecution had to prove only that members of defendant's gang *committed* an offense, not that its members were *convicted* of an offense. Detective Martin's testimony and the complaint was thus sufficient to show multiple members of defendant's gang committed a drive-by shooting targeting a perceived rival gang member in 2013. Accordingly, sufficient evidence demonstrates that two members of defendant's gang committed two different predicate offenses.

C

*Defendant Was Not Harmed By The Instruction Under Prior Law*

Regardless of whether there is sufficient evidence, defendant argues he was prejudicially harmed by the court's instructing of the jury under the former gang statute. Specifically, defendant argues the jury likely considered the current offense when determining whether the prosecution made a sufficient showing of predicate offenses because the evidence was questionable whether Bueno's and Chagolla's convictions sufficed. We disagree.

As is clear, the jury was instructed that it could consider defendant's current offense when determining whether the prosecution demonstrated the required predicate offenses. This was error under current law. (§ 186.22, subd. (e)(2).) We assess the

12

harmfulness of an instructional error pertaining to the elements of an offense or enhancement under the *Chapman* standard of review.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 668, citing *Chapman v. California*, *supra*, 386 U.S. 18.)  Under the *Chapman* standard "it is not enough to show that substantial or strong evidence existed to support a conviction under the correct instructions.  As the United States Supreme Court explained in *Sullivan v. Louisiana* (1993) 508 U.S. 275 . . . , 'the question . . . is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.  [Citation.] . . . The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.' " (*Sek*, at p. 668.)

Here, we can confidently say the jury's finding that defendant's gang committed two predicate offenses was not based on defendant's charged crimes.  When arguing the predicate offenses, the prosecution pointed to the records of conviction for Chagolla and Bueno.  While it also pointed to the current offense as an option for the jury, this was at the end of its extended discussion of the records of conviction and Detective Martin's testimony regarding Chagolla and Bueno.  Further, defendant admitted he was a Norteño gang member and the Norteño gang was a criminal street gang.  Defendant's focus during closing argument was that he was not guilty because he was not present during the commission of the crimes.  As a result, defendant's case is like *People v. Vinson* (2011) 193 Cal.App.4th 1190, 1200, where the appellate court affirmed the defendant's conviction of petty theft with a prior theft conviction even though the law had changed after trial to require the proof of three prior convictions, rather than one.  There, the defendant conceded he had been convicted of two prior convictions, and his attorney stipulated at trial to a third conviction.  Thus, there was no dispute as to whether the new element in the law was proved.  (See *ibid.*)  The same is true here.  For the same reasons,

13

defendant has failed to demonstrate his jury trial and due process rights were violated by the erroneous instruction.

D

*Defendant Was Not Harmed By Jointly Trying His Substantive*

*Offenses With His Gang Participation Offense And Gang Enhancements*

Defendant argues newly enacted section 1109 applies to him and the failure of the trial court to bifurcate his gang enhancements and gang participation offense from the trial on his substantive offenses resulted in prejudicial harm. The People disagree that section 1109 is retroactive to defendant's case but argue any resulting harm does not require reversal. We agree with the People that reversal is not required.

As it pertains to Assembly Bill No. 333's (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 5) addition of section 1109, the Courts of Appeal are split on whether the provision applies retroactively. Several courts have concluded section 1109 applies retroactively given the legislative history demonstrating the intended effect of a bifurcated trial was to lessen the prejudice gang allegations carry. (See e.g., *People v. Burgos* (2022) 77 Cal.App.5th 550, 564-568, review granted July 13, 2022, S274743; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1125-1131.) But others have concluded section 1109 operates only prospectively given the procedural posture of the provision. (See e.g., *People v. Perez* (2022) 78 Cal.App.5th 192, 207, review granted May 23, 2022, S275090; *People v. Ramirez* (2022) 79 Cal.App.5th 48, 65, review granted Oct. 12, 2022, S275341.) Here, it is unnecessary to decide whether section 1109 applies retroactively or only prospectively. Even if the statute applies retroactively, defendant was not prejudiced by the failure to bifurcate the trial on the gang participation offense and gang-related enhancements.

Relying on dicta in *People v. Burgos*, *supra*, 77 Cal.App.5th at page 568 (rev. granted), defendant argues the failure to bifurcate gang-related charges and enhancements in accordance with section 1109 constitutes structural error requiring reversal of his

14

remaining convictions. We find that analysis unpersuasive. (See *People v. Montano* (2022) 80 Cal.App.5th 82, 108; *People v. Ramos*, *supra*, 77 Cal.App.5th at pp. 1131-1133 [concluding § 1109 error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836].) First, "[t]here is a strong presumption that any error falls within the trial error category," i.e., is not structural, and thus "subject to harmless error analysis." (*People v. Anzalone* (2013) 56 Cal.4th 545, 554.) Second, the right to bifurcation under section 1109 is purely statutory. (Cf. *People v. Hinton* (2006) 37 Cal.4th 839, 874 [describing right to a separate proceeding under § 190.1 as "merely statutory, not constitutional"].) " 'Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she [or they] would have obtained a more favorable result.' " (*Anzalone*, at p. 553; accord, *People v. Epps* (2001) 25 Cal.4th 19, 29 [where the error "is purely one of state law, the *Watson* harmless error test applies"].)

Defendant claims the alleged error was prejudicially harmful under the *Watson* standard. Defendant argues his trial was so permeated by gang evidence that it was impossible the jury could ignore it when determining his guilt of the substantive offenses. Under that standard, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) That standard was not met here.

Defendant's defense was that *he was not involved in the shooting* and it could have been any other local Norteño gang member. Thus, the jury did not believe defendant was a perpetrator of the drive-by shooting, as opposed to another person, simply because of his gang involvement. Also, the gang offenses were similar to the charged conduct, but without involving children, and the other evidence consisted of mostly pictures of people exhibiting indicia of gang membership and expert testimony. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 ["Any evidence admitted solely to prove the gang enhancement was not so minimally probative on the charged offense, and so

15

inflammatory in comparison, that it threatened to sway the jury to convict regardless of defendants' actual guilt"].)

Further, the trial court instructed the jury that the gang evidence offered by the prosecution was to be considered only in connection with the gang participation offenses and gang-related allegations and not when considering whether defendant was guilty of the substantive charges and enhancements. We presume the jury followed these instructions. (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.) Finally, some of the gang evidence was relevant to motive. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167 ["evidence related to gang membership is not insulated from the general rule that all relevant evidence is admissible if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative"].) Taken together, defendant was not prejudiced by the gang evidence admitted at his trial.

DISPOSITION

Defendant's five convictions for attempted murder are reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.


/s/
ROBIE, Acting P. J.


We concur:


/s/
MAURO, J.


/s/
BOULWARE EURIE, J.


17